IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| KIMMEL'S COAL AND PACKAGING, INC., | : | Case No. 18-bk-01609 (HWV) |
| MEADOWBROOK COAL COMPANY, INC., | : | Case No. 18-bk-02506 (HWV) |
| MICHAEL COAL COMPANY, INC., | : | Case No. 18-bk-02507 (HWV) |
| KIMMEL'S POWER PLANT SERVICES, INC., | : | Case No. 18-bk-02509 (HWV) |
| KIMMEL'S MINING COMPANY, INC. | : | Case No. 18-bk-02510 (HWV) |
| | : | |
| Debtors-in-Possession | : | Jointly Administered under |
| | : | Docket No. 18-1609 |
| FULTON BANK, N.A., | : | |
| | : | Motion for Stay of Order Pending Appeal |
| Respondent/Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAUSCH CREEK LAND, L.P., | : | |
| | : | |
| Movants/Appellant | : | |

## MEMORANDUM DECISION
## DENYING DEBTORS' MOTION FOR A STAY PENDING APPEAL

Before the Court is the Motion of Rausch Creek Land, L.P. ("Rausch Creek"), pursuant to Federal Rule of Bankruptcy Procedure 8007, for a stay pending appeal of this Court's Order (ECF No. 577) granting the Motion of Fulton Bank, N.A. ("Fulton Bank") to Compel Compliance with Sale Order and For Declaratory Relief Regarding Security Interests of Fulton Bank, N.A. (the "Motion to Compel")(ECF No. 369) in part and denying Fulton Bank's Motion for Order of Contempt Against Rausch Creek (the "Motion for Contempt")( ECF No. 494). Rausch Creek argues it is entitled to a stay because it has a substantial possibility of success on appeal and will suffer irreparable harm if the Court denies them a stay (ECF No. 581). Additionally, Rausch Creek asserts that granting a stay will not substantially harm either Fulton Bank or the Pennsylvania Department of Environmental Protection ("PA DEP"), and the balance of public interest concerns weighs in favor of the imposition of a stay (ECF No. 581). Fulton

1

Bank, the PA DEP, and the Chapter 7 Trustee, Markian R. Slobodian ("Trustee"), each oppose the Motion, arguing that Rausch Creek is unlikely to succeed in its appeal, will not suffer any irreparable injury without a stay, and have failed to show the granting of a stay is consistent with public interests (ECF Nos. 590, 595, and 596).

For the following reasons, the Court finds that Rausch Creek has not met the standard for a stay but agrees with Rausch Creek that there is a likelihood of success on the merits insofar as the Court previously concluded that: (i) 25 Pa. Code § 86.56 (hereinafter "§ 86.56") was the only way to effectuate transfer[1] of the Permits,[2] or the rights granted thereunder, pursuant to the APA and Sale Order, (ii) Rausch Creek had to seek transfer of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order under § 86.56, and (iii) reclamation liability would be assumed by Rausch Creek as a matter of law pursuant to § 86.56. These findings do not disrupt this Court's core holding in *In re Kimmel's Coal & Packaging, Inc.*, No. 18-BK-01609 (HWV), 2021 WL 4458835 (Bankr. M.D. Pa. Sept. 28, 2021) (hereinafter "*Kimmel's II*") that under the plain terms of the parties' agreement, Rausch Creek was contractually obligated to apply for and accept transfer of whatever portion of the Permits that it could even if that portion is something less than 100%. *Kimmel's II*, WL4458835, at *10. The Court, therefore, suggests that the proper remedy would be for this Court's Order in *Kimmel's II* to be vacated and the

---

[1] As will be further explained *infra*, the word "transfer" is a significant source of confusion in this case. Throughout *Kimmel's I* and *Kimmel's II*, the Court has construed the word "transfer" as a nontechnical term that ordinarily means "to convey from one person, place, or situation to another" or simply "convey". Transfer, Merriam-Webster's Collegiate Dictionary, https://www.merriam-webster.com/-dictionary/transfer. In contrast, Rausch Creek appears to believe the word "transfer" is technical in nature and should thus be given a technical meaning based on PA DEP's interpretation of 25 Pa. Code § 86.56 ("Transfer of permit"). For present purposes, and unless otherwise noted, the Court will continue to give the word "transfer" its ordinary non-technical meaning, which is "convey."

[2] All capitalized terms used herein and not otherwise defined in this Memorandum Order will have the meanings set forth in *Kimmel's I* and *Kimmel's II*.

2

Case 1:18-bk-01609-HWV    Doc 601    Filed 12/03/21    Entered 12/03/21 15:59:15    Desc
Main Document    Page 2 of 19

matter remanded to correct the above errors and to address the potentially unresolved (and primary) issue of responsibility for pre-existing reclamation liability.

## I. JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered to Middle District Docket No. 16-3. The Court declares that Rausch Creek's Motion for a Stay Pending Appeal ("Motion for Stay"), and the Responses filed thereto by Fulton Bank, the PA DEP, and the Trustee, create a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## II. BACKGROUND

Rausch Creek's assertion that mining permits cannot be partially transferred under Pennsylvania mining law is central to its Motion for Stay. This simple averment is difficult to evaluate, however, without a shared interpretation of Pennsylvania mining law and a mutual understanding of the word "transfer." Because a great deal of confusion seems to flow from the latter, the Court will begin there.

### A. Transfer

The importance of the meaning of the word "transfer" as used in this case cannot be overstated as it is central to explaining the widely divergent positions taken by the Court and by Rausch Creek. Indeed, this case is an example of the problems that can emanate from different interpretations of a single word. As will be explained *infra*, in its simplest terms, throughout *Kimmel's I* and *Kimmel's II* the Court has interpreted the word "transfer," particularly as it appears in context in the APA and Sale Order, as a nontechnical term that means "to convey

3

Case 1:18-bk-01609-HWV    Doc 601    Filed 12/03/21    Entered 12/03/21 15:59:15    Desc
Main Document    Page 3 of 19

from one person, place, or situation to another" or simply "convey."³ Transfer, <u>Merriam-Webster's Collegiate Dictionary,</u> https://www.merriam-webster.com/-dictionary/transfer; *see Kimmel's II*, 2021 WL 4458835, at *7 n.12. In contrast, and important to understanding Rausch Creek's position here, it appears Rausch Creek believes the word "transfer" in context in the APA is technical in nature and should be given a technical meaning based on the PA DEP's interpretation of § 86.56. If this is the case, the Court does not agree with Rausch Creek's technical interpretation of the word "transfer," particularly as it relates to the APA. Likewise, Rausch Creek does not appear to agree with the Court's ordinary interpretation of the word "transfer" as it relates to this case generally. Incredibly, until the writing of this Memorandum it appears the Court and Rausch Creek were each unaware of the other's different interpretation of this critical word. Since the different meanings ascribed by the parties lead to such disparate conclusions in this case, this issue (more than any other) explains why Rausch Creek and the Court seem to have irreconcilable interpretations of the APA, the Sale Order, the Stipulation, and the Court's opinions in *Kimmel's I* and *Kimmel's II*.

### B. Pennsylvania Mining Law

Another source of confusion in this matter flows from the interpretation and application of Pennsylvania mining law, and particularly § 86.56. Some of this confusion is sourced in the different meanings given to the word "transfer" as described above. The rest of it comes from different interpretations of Pennsylvania mining law, particularly § 86.56. The applicability of

---

³ In so doing, the Court applied the Ordinary-Meaning Canon, which provides "words are to be understood in their ordinary, everyday meanings – unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012); *see also In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013). Since the contextual use of the words, "transferable," "transferred," and "transfer" in the APA do not bear a technical sense, the Court understands them in their ordinary, everyday meanings.

4

this section is important because if the Permits cannot be transferred under § 86.56, then reclamation liability will not follow as a matter of law pursuant to § 86.56(c)(2) and the issue of who bears responsibility for the pre-existing reclamation on the Real Property may remain unresolved.

In *Kimmel's I*, the Court generally interpreted § 86.56 as establishing the only method available under Pennsylvania mining law to effectuate the transaction contemplated under the APA.[4] See *Kimmel's I*, WL 5576960, at *7, *9, n. 17. In *Kimmel's II*, the Court interpreted § 86.56 more specifically as establishing the only method available under Pennsylvania mining law for Rausch Creek to obtain some or all the rights to mine the Permitted Land as those rights existed under the Permits on the date of Closing. See *Kimmel's II*, 2021 WL 4458835, at *8-10. Rausch Creek seems to misunderstand the Court's general interpretation of § 86.56 in *Kimmel's I* to mean that unless transfer of the Permits occurs pursuant to § 86.56 exclusively, Rausch Creek has no additional responsibility under the APA to seek mining rights or assume reclamation liability.[5] Such an understanding is incorrect. This has become a significant source of confusion in this case.

A second source of confusion regarding Pennsylvania mining law centers upon whether a proper application of § 86.56 allows for partial transfer of a mining permit. While the Court expressly did not decide whether a permit can be transferred in part under § 86.56, it did hold that Rausch Creek was obligated under the Sale Order and APA to submit an application pursuant to § 86.56 seeking transfer of the Permits or as much of them as is possible. *Kimmel's*

---

[4] The Court's reasoning for this interpretation was based upon the language of § 86.56(a), which plainly states: "[a] transfer, assignment or sale of the rights granted under a permit may not be made except as provided in this section." *Id*. The Court interpreted this to mean just what it says on its face: to transfer, assign, or sell the rights under a permit (which is what the parties were seeking to do under the APA), the procedures set forth in § 86.56 are the only way to do it.

[5] This may explain why Rauch Creek withdrew its 2019 Application just 7 days after *Kimmel's I* was issued.

5

*Coal II*, 2021 WL 4458835, at 9-12. The Court's reasoning was that it did not read anything in the plain language of § 86.56 or other provisions of Pennsylvania mining law that expressly precludes such a transfer of a portion of the rights under a Permit.[6] *Kimmel's Coal II*, 2021 WL 4458835, at *9. By contrast, Rausch Creek cites to a PA DEP Technical Guidance Memorandum, *Permits Transfers for Coal and Noncoal Operators*, Document Number 563-2112-218, March 19, 2016 (the "TGM") in support of its proposition that mining permits cannot be partially transferred. ECF No. 581 at ¶ 2.[7] The PA DEP agrees that partial mining permit transfers are not allowed under § 86.56. (ECF No. 595, ¶ 5). If Rausch Creek and the PA DEP are correct, then the Court acknowledges that § 86.56 cannot be used to convey the Permits or any of the rights thereunder due to the inaccessibility of the Dale Coal Land. *See Kimmel's I*, WL 5576960, at *9.[8]

In sum, the disconnect (and here is where the concept of the different definitions of "transfer" comes back into play) is that the Court never intended: (1) for the concept of a transfer to mean a "legal transfer" of Permits under § 86.56 as Rausch Creek may believe; or (2) to rule on how transfers can be legally effectuated under Pennsylvania mining law or whether the

---

[6] Because the Court did not read the plain language of § 86.56 to unequivocally prohibit a partial transfer, the Court essentially found that there was a possibility the PA DEP could approve such a transfer (which, for reasons discussed *infra* remains true). Believing that such a partial transfer was possible and there was no other way to transfer the permits, the Court ordered Rausch Creek to fulfill its obligations under the APA by applying for a partial permit transfer under § 86.56. However, the Court expressly left it to the PA DEP whether to approve any such application, which included a potential denial on the ground that § 86.56 does not permit partial transfers. This, again, highlights the confusion over the word "transfer." The Court did not need to decide this legal issue of partial transfer under § 86.56 because it was only deciding that Rausch Creek had to fulfill its agreement to seek permits to conduct mining activities on the Real Property (which the Court incorrectly thought had to be done under § 86.56).

[7] The TGM may be found on the docket at ECF No. 593. The TGM states that "[t]he boundary of the permit being transferred must remain unchanged. Transfer of a portion of a mine permit will not be granted." TGM at § A(4). However, the TGM also says that it does not have the effect of law and is not binding on this Court or the PA DEP. To the contrary, the Memorandum itself expressly states that it should not be given the weight or deference of an adjudication or a regulation. TGM at p. i. It also affords the PA DEP the discretion to deviate from it as circumstances warrant. *Id.* Thus, even with the TGM, there remains the possibility that a partial transfer is permissible under § 86.56.

[8] But, once again, this issue may be irrelevant because the Court was not intending to hold that the parties had to effectuate a "legal transfer" under § 86.56, but only that Rausch Creek had to endeavor to obtain permits to conduct mining activities on as much of the Real Property as it could. The Court's error was in believing the only way to accomplish this was under § 86.56.

Case 1:18-bk-01609-HWV    Doc 601    Filed 12/03/21    Entered 12/03/21 15:59:15    Desc
Main Document    Page 6 of 19

Permits could be legally transferred under same. Indeed, the latter is irrelevant and unnecessary to the Court's underlying rationale in both *Kimmel's I* and *Kimmel's II*. Instead, the Court was looking at this matter holistically and as a commercial sales transaction, just as it did when it approved the Sale Order (*e.g.*, Rausch Creek (as Buyer) paid a sum of money to the Debtors (as Sellers) in exchange for the Real Property and the ability to seek and obtain permission to conduct mining activities on that land and the Dale Coal Land, along with certain concomitant obligations). Thus, the Court was not concerned with how mining permits can be transferred under Pennsylvania mining law provided there was some means to accomplish it (which the Court incorrectly thought was § 86.56). Instead, the Court focused on the fact that Rausch Creek purchased the ability to seek and obtain permission to conduct mining activities on the Real Property, including an obligation to assume the existing reclamation liability once it obtained a permit. Where the Court erred is in concluding that the only way to consummate the commercial transaction was pursuant to § 86.56. Importantly, the Court now recognizes that § 86.56 is not the only method available under Pennsylvania mining law for Rausch Creek to obtain some or all the rights to mine the Permitted Land as the parties have identified other means under Pennsylvania mining law to accomplish this.[9]

In view of the foregoing, while the Court believes it correctly concluded in *Kimmel's II* that pursuant to the APA and Sale Order the parties agreed that Rausch Creek would apply for transfer of as much of the Permits as it could in accordance with Pennsylvania mining law,[10] and

---

[9] The PA DEP has stated that the parties' agreement can be effectuated under Pennsylvania mining law by having Rausch Creek submit a new application requesting a permit for all portions of the land exclusive of the Dale Coal Lands and then have the Debtors reduce the size of the existing (White Pine) permit to exclude the lands contained in the new application. Indeed, it appears that this is precisely what Rausch Creek was seeking to do with its 2019 Application (previously defined in *Kimmel's I* as the "New Permit Application" and defined in *Kimmel's II* as the "2019 Application").

[10] See § III(A) of *Kimmel's II* where the Court held that "the plain language of the Sale Order and APA unambiguously demonstrates that the parties intended a transfer of the Permits, or the rights granted thereunder, from the Debtors to Rausch Creek as contemplated in the PA DEP Regulations." *Kimmel's II*, WL4458835, at *6.

7

that Rausch Creek was contractually obligated to apply for and accept transfer of whatever portion of the Permits that it could even if that portion is something less than 100%,[11] the Court now believes it was incorrect in concluding that: (i) § 86.56 was the only way to effectuate such a transfer under the APA and Sale Order; (ii) Rausch Creek had to seek a transfer as described in *Kimmel's II* under § 86.56; and (iii) reclamation liability followed as a matter of law pursuant to § 86.56. Such a scenario does not disrupt this Court's holding in *Kimmel's II* because the intended transfer of the Permits or the rights granted thereunder (*e.g.,* the intended underlying commercial transaction) can still occur under the Pennsylvania mining law even if it cannot be accomplished under § 86.56.

With the above context in mind, the Court now turns to the instant Motion for Stay.

### III. DISCUSSION

The determination of whether to grant a stay pending appeal requires consideration of the following four factors under the Third Circuit's "sliding-scale" approach: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *In re Revel AC, Inc.*, 802 F.3d 558, 568-70 (3d Cir. 2015); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). These factors must be balanced, with the first two being most critical. *In re Revel AC, Inc.*, 802 F.3d at 568. The Court will address each of these factors in the order presented.

---

[11] See § III(B) of Kimmel's II where the Court held that "under the plain terms of the parties' agreement, Rausch Creek was contractually obligated . . . to apply for and accept transfer of . . . whatever portion of the Permits that it could . . . even if that portion is something less than 100%." *Kimmel's II*, WL4458835, at *10.

## A. Likelihood of Success on the Merits

To establish the first factor, there must be a "'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d at 568-69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). A "reasonable chance of winning . . . need not be more likely than not," *Id.* at 569, but it must be "significantly better than negligible." *Id.* at 571. For the following reasons, while the Court agrees that it may have misapplied § 86.56, there is not a likelihood of success on the merits concerning this Court's fundamental holding that, under the APA and Sale Order, Rausch Creek was contractually obligated to apply for and accept transfer of whatever portion of the Permits that it could even if that portion is something less than 100%.

### 1. First Issue Presented on Appeal

Rausch Creek's first issue presented on appeal asserts that the Court erred as a matter of law or abused its discretion "in ruling that mining permits can be partially transferred under Pennsylvania's mining permit transfer law." (ECF No. 594, Pg. 1).

To the extent this issue is interpreted to mean the Court erred in ruling that mining permits can be partially transferred under § 86.56 exclusively, the Court concludes that Rausch Creek has no likelihood of success. This is so because the Court did not make such a ruling. To the contrary, the Court expressly wrote that:

> The Court is not deciding whether a permit can be transferred in part. The Court only holds that under the Sale Order and APA Rausch Creek is obligated to submit an application pursuant to § 86.56 seeking transfer of the Permits or as much of them as is possible. Whether any such transfer ultimately is approved is within the purview of the PA DEP and subject to applicable state law.

9

*Kimmel's Coal II*, 2021 WL 4458835, at n.20.[12] Thus, the language of *Kimmel's II* contradicts any assertion that the Court erred as a matter of law or abused its discretion in ruling that mining permits can be partially transferred under § 86.56. Likewise, to the extent this issue is interpreted to mean the Court erred in ruling that mining permits can be partially transferred under the Pennsylvania mining regulations, 25 Pa. Code §§ 1.1 *et seq.*, the Court again finds no likelihood of success on the merits. This is because the Court interpreted the word "transfer" as used in the APA and Sale Order to mean "convey." As such, the word "transfer" is not limited to any technical meaning or understanding under § 86.56. Because the Permits or a portion of the rights granted thereunder can clearly be "conveyed" from the Debtors to Rausch Creek as evidenced by the 2019 Application and the representations of the PA DEP, Rausch Creek's argument to contrary here must fail.

Notwithstanding the foregoing, however, the Court does find a likelihood of success on the merits regarding Rausch Creek's first issue presented to the extent it raises concerns regarding the Court's conclusions that: (i) § 86.56 was the only way to effectuate transfer (conveyance) of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order; and (ii) Rausch Creek had to seek transfer of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order under § 86.56 only. As discussed above, however, any such error does not negate the Court's primary holding that "under the plain terms of the parties' agreement, Rausch Creek was contractually obligated . . . to apply for and accept transfer of . . . whatever portion of the Permits that it could . . . even if that portion is something less than 100%." *Kimmel's II*, WL4458835, at *10.

---

[12] *See* n.6 *supra*.

## 2. Second Issue Presented on Appeal.

Rausch Creek's second issue presented asserts the Court erred as a matter of law or abused its discretion in "interpreting the Asset Purchase Agreement to require a partial transfer of a mining permit in contravention of Pennsylvania's mining permit transfer law." (ECF 594, at 1). To the extent this issue is interpreted to mean the Court erred in interpreting the Asset Purchase Agreement to require a partial transfer of a mining permit in contravention of 25 Pa. Code §§ 1.1 *et seq.*, the Court concludes that Rausch Creek has no likelihood of success for several reasons.

First, Rausch Creek has failed to offer any argument challenging the Court's reasoning in § III(B) of *Kimmel's II* where it found that under the plain terms of the parties' agreement, Rausch Creek was contractually obligated to apply for and accept transfer of whatever portion of the Permits that it could even if that portion is something less than 100%. *Kimmel's II*, WL4458835, at *10. Second, and as with the first issue presented, the Court interpreted the word "transfer" in context in the APA and Sale Order to mean "convey." As such, the word "transfer" is not limited to any technical meaning that Rausch Creek may believe is imposed by § 86.56. Because the Permits or the rights granted thereunder can be partially "conveyed" from the Debtors to Rausch Creek as evidenced by the 2019 Application and the representations of the PA DEP and because Rausch Creek has failed to offer any argument challenging the Court's reasoning in § III(B) of *Kimmel's II*, Rausch Creek's argument here must fail.

Notwithstanding the foregoing, however, the Court does find a likelihood of success on the merits regarding Rausch Creek's second issue presented on appeal to the extent it raises concerns regarding the Court's conclusions that: (i) § 86.56 was the only way to effectuate transfer (conveyance) of the Permits, or the rights granted thereunder, pursuant to the APA and

11

Sale Order; and (ii) Rausch Creek had to seek transfer of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order under § 86.56 only. As discussed above, however, any such error does not negate the Court's primary holding that "under the plain terms of the parties' agreement, Rausch Creek was contractually obligated . . . to apply for and accept transfer of . . . whatever portion of the Permits that it could . . . even if that portion is something less than 100%." *Kimmel's II*, WL4458835, at *10.

### 3. Third Issue Presented on Appeal.

Rausch Creek's third issue presented asserts the Court erred as a matter of law or abused its discretion in "placing the burden of proof upon Rausch Creek to show whether a mining permit can be partially transferred." (ECF 594, at 1). To the extent this issue is interpreted to mean the Court erred in requiring Rausch Creek to engage in a futile act (*e.g.*, apply for a transfer pursuant to § 86.56 knowing it will likely be denied)[13] the Court concludes that Rausch Creek may have some likelihood of success. As noted in *Kimmel's II*, the Court does not read anything in the plain language of § 86.56 that precludes a "transfer, assignment, or sale" of a portion of the rights under a permit. *Kimmel's II*, 2021 WL 4458835, at *9.[14] However, the Court acknowledges that the PA DEP disagrees and believes any such application under § 86.56 would likely be denied.[15]

In view of the foregoing, then, the Court does find some likelihood of success on the merits regarding Rausch Creek's third issue presented on appeal to the extent it raises concerns regarding the Court's conclusions that: (i) § 86.56 is the only way to effectuate a transfer

---

[13] ECF No. 581, at 7, ¶ 27,
[14] *See* n.6, 7 *supra*.
[15] The Court notes that resolution of this issue (*e.g.*, whether partial mining permit transfers are allowed under § 86.56) is not necessary because it does not impact the Court' primary holding that "under the plain terms of the parties' agreement, Rausch Creek was contractually obligated . . . to apply for and accept transfer of . . . whatever portion of the Permits that it could . . . even if that portion is something less than 100%." *Kimmel's II*, WL4458835, at *10.

(conveyance) of the Permits or the rights granted thereunder consistent with the APA and Sale Order; and (ii) Rausch Creek must seek such a transfer of the Permits, or the rights granted thereunder, consistent with the APA and Sale Order under § 86.56 as opposed to another means permitted by state law.

### 4. Fourth Issue Presented on Appeal.

The Court does not find a likelihood of success on the merits regarding Rausch Creek's fourth issue presented on appeal asserting the Court erred as a matter of law or abused its discretion "in ruling that Rausch Creek was judicially estopped from asserting a mining permit cannot be partially transferred." (ECF No. 594, at 1). Recall that to establish a strong likelihood of success on the merits, there must be a "'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d at 568–69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). Here, Rausch Creek has failed to plead a single fact or averment or make any arguments in its Motion for Stay to support its assertion here.

In contrast, the record demonstrates that Rausch Creek previously acknowledged an obligation to apply for and obtain the rights to mine a "portion" of the Permitted Land including any reclamation liability attendant thereto in its Response to the Motion to Compel. *See* Rausch Creek's Response to the Motion to Compel, ECF No. 381, ¶¶ 11-16; see also *Kimmel's II*, WL4458835, at *8.[16] This acknowledgement was subsequently confirmed and clarified by Rausch Creek in the Stipulation partially resolving the Motion to Compel and Rausch Creek's response thereto, where Rausch Creek agreed to apply for and obtain the rights to mine the Real

---

[16] Given the Court's interpretation of the word "transfer" and assuming the mining rights sought by Rausch Creek are just as those rights existed under the Permits at Closing, the Court has always viewed this acknowledgment to apply for and accept a partial conveyance of the rights granted under the Permits as a qualifying *partial transfer of the Permits* under paragraph 2.1(c) of the APA. See *Kimmel's I*, WL 5576960, at *11, and *Kimmel's II*, WL 4458835, at *13.

13

Property (only) on or before July 15, 2019. Pursuant to the Stipulation, Rausch Creek submitted its 2019 Application to the PA DEP on July 15, 2019 seeking the rights to mine the Real Property (just as those rights existed under the Permits at Closing) and assuming all reclamation liability attendant thereto.[17] Fulton Bank, the Debtors, the PA DEP, and the Court all relied upon the foregoing representations made by Rausch Creek in its Response to the Motion to Compel, the Stipulation, and the 2019 Application. *See, i.e.*, Mot. to Compel Hr'g Tr. 17:19-24, 7:17-8:9, 9:16-21, 5:19-6:1, 11:15-16, 12:20-25. As such, in *Kimmel's I*, the Court was led to believe there was not (and would never be) any dispute over the reclamation liability on the Real Property because Rausch Creek had already submitted an application assuming that liability. However, seven days after the Court issued *Kimmel's I*, Rausch Creek withdrew the 2019 Application and submitted the 2020 Application in which it did **not** assume all reclamation liability attendant to the Real Property. This change may be due to Rausch Creek's misunderstanding of the Court's general interpretation of the APA and § 86.56 as described above. Nevertheless, Rausch Creek should be estopped from changing its position as described in its Response to Motion to Dismiss, the Stipulation, the 2019 Application, and as it represented to the Court at the Hearing on the Motion to Compel.

Accordingly, the Court does not find a likelihood of success on the merits regarding this issue.

### B. No Irreparable Harm.

Rausch Creek also must demonstrate that irreparable injury is likely and not merely possible in the absence of a stay. *In re Revel AC, Inc.*, 802 F.3d at 569. Establishing irreparable

---

[17] For the reasons previously stated, the Court views the 2019 Application as a partial conveyance of the Permits that qualifies as a "transfer" under paragraph 2.1(c) of the APA. See n. 16, *supra*. Resubmitting this 2019 Application would therefore satisfy the conditions of the Court's ruling in *Kimmel's II*, with the obvious exception of requiring Rausch Creek to submit an application pursuant to § 86.56 (which the Court now recognizes as possibly incorrect).

14

harm requires showing that it is "more apt to occur than not." *Id.* To demonstrate irreparable injury, the movant must demonstrate "harm that cannot be prevented or fully rectified by a successful appeal." *United States v. Safehouse*, 458 F. Supp. 3d 687, 691 (E.D. Pa. 2020) (citing *In re Revel AC, Inc.*, 802 F.3d at 568 (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984) (Posner, J.)). The "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *In re Revel AC, Inc.*, 802 F.3d at 571 (quoting *Sampson v. Murray,* 415 U.S. 61, 90, 94 S. Ct. 937, 39 L.Ed.2d 166 (1974) (internal quotation marks omitted)).

Here, Rausch Creek argues that this Court "has set [] Rausch Creek up for failure since what it is ordering Rausch Creek to do is impossible." (ECF No. 581, at 8, ¶32). Rausch Creek further argues that it "will have no legal recourse if it is forced to comply with this Court's order and the PA DEP changes its previous opinion that the Permits cannot be transferred due to this Court's (incorrect) order." (ECF No. 581, at. 8, ¶33). The Court rejects these arguments as unpersuasive. To begin, even assuming Rausch Creek's first argument as stated above is true and correct, it is not clear to this Court how the argument establishes (or even articulates) "harm that cannot be prevented or fully rectified by a successful appeal." Consider the possibilities: If the PA DEP denies the § 86.56 Application (as Rausch Creek believes it must under the law), then Rausch Creek will have complied with this Court's Order with minimal effort and expense[18] and will not be automatically liable under the law for pre-existing reclamation. Alternatively, and contrary to Rausch Creek's second argument identified above, if "the PA DEP changes its previous opinion that the Permits cannot be transferred due to this Court's (incorrect) order" and

---

[18] Rausch Creek already prepared and previously submitted an application (the 2019 Application) that would satisfy the Court's Order in *Kimmel's II*.

15

approves the § 86.56 Application, then Rausch Creek will be free to appeal that decision in accordance with state law as any other aggrieved party is entitled to do. Any such successful appeal will prevent the claimed harm of being forced to accept reclamation liability. ECF No. 581 at ¶ 12.

Furthermore, as stated by the PA DEP in its Response to Rausch Creek's Motion for Stay, "if the stay is not granted and Rausch Creek submits a new permit application or in the alternative amends the 2020 permit application to comply with the Bankruptcy Court's ruling, and later the District Court reverses the Bankruptcy Court's holding, the permit can be duly revised pursuant to 25 Pa. Code § 86.52. As such, Rausch Creek will suffer no irreparable harm if a stay is not granted." (ECF No. 595. at 4, ¶ 12).

Thus, as to this second factor, Rausch Creek has failed to demonstrate that any irreparable injury is likely to occur in the absence of a stay.

### C. Balance of Harms and Public Interest.

If an "applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *In re Revel AC, Inc.*, 802 F.3d at 569 (quoting *Nken v. Holder,* 556 U.S. 418, 435 (2009)). Courts must then weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). *Id*. This is called the balancing of harms or balancing of equities. Courts must also take into account where the public interest lies (factor four)—in effect, how a stay decision has "consequences beyond the immediate parties." *Id*. (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 388 (7th Cir.1984) (Posner, J.)).

Although the Court finds Rausch Creek has not satisfied the second factor (irreparable harm), the Court nonetheless continues its analysis and finds that this third factor also is not

16

Case 1:18-bk-01609-HWV    Doc 601    Filed 12/03/21    Entered 12/03/21 15:59:15    Desc
Main Document    Page 16 of 19

satisfied. Here, Rausch Creek begins by arguing that "entry of an order staying the Motion to Compel Order will not cause substantial injury to the Debtors or any other party to this proceeding." (ECF No. 581, at 8, ¶ 34). In support of this averment, Rausch Creek argues that Fulton Bank will not be harmed "as reclamation takes years to undertake and PA DEP has not demanded cleanup of the affected areas of the Permits." (ECF No. 581, at 8, ¶ 35). It also argues that "[t]he allegation that the Bankruptcy Estate will have a large administrative claim is disingenuous as such administrative claim existed on the day the Debtors were in bankruptcy and had nothing to do with actions taken by Rausch Creek." (ECF No. 581, at 9, ¶ 37). These arguments are unpersuasive.

Regarding the first argument advanced by Rausch Creek, the PA DEP advised the Court at the November 9, 2021 hearing on the Motion for Stay (the "Stay Hearing") that granting a stay in this matter would allow Rausch Creek to continue to pursue its 2020 Application which was close to being approved. Stay Hearing at 12:30:42. PA DEP also advised that "what Rausch Creek is proposing in the 2020 permit would possibly trigger the Department to call the [Fulton Letters of Credit] because the old permit would have to be shrunk and that reclamation would have to be done on the old permit." Stay Hearing at 11:33:31. Based upon these representations, the Court rejects Rausch Creek's first argument.

The Court also rejects Rausch Creek's second argument that the "administrative claim existed on the day the Debtors were in bankruptcy and had nothing to do with actions taken by Rausch Creek." (ECF No. 581, at 9, ¶ 37). The Court rejects this argument because it ignores the obvious intervening and superseding circumstances associated with: (1) the sale of substantially all the Debtors' assets; (2) the terms and conditions of the APA (which Rausch Creek voluntarily bound itself to); (3) the Sale Order approving each of those things (and the Court's findings

attendant thereto); and (4) the Court's findings and conclusions in *Kimmel's I* and *Kimmel's II*. Significantly, this Court would never have approved the Sale Order if Rausch Creek was obtaining the rights to mine the property without also accepting the existing reclamation obligations.

Finally, regarding the public policy element, the Court agrees with the PA DEP's assessment. In its Response to the Motion for Stay, the PA DEP observes:

> Rausch Creek latches on to a technicality claiming that because the Permits[] cannot be transferred in full under 25 Pa. Code § 86.56, it should be relieved of all reclamation obligations. This outcome is contrary to the intent of the parties as forth in the Sale Order, the APA, and the July 8, 2019 Stipulation and as evidenced by the 2019 Permit Application[] and is contrary to public policy. To allow Rausch Creek to be relieved of all reclamation obligations is contrary to the intent and purpose of the sale process under bankruptcy law because it leaves the obligations with the insolvent Debtors.

ECF No. 595, at 4-5, ¶ 13.

For the foregoing reasons, Rausch Creek has failed to satisfy its burden of demonstrating that a balancing of harms or balancing of equities in this matter favors issuing a stay pending appeal. Rausch Creek also has failed to demonstrate that the absence of the stay will have negative "consequences beyond the immediate parties." To the contrary, to the extent public policy considerations are relevant here, they tend to favor denying the request for a stay for the reasons stated above.

### IV. CONCLUSION

In conclusion, the word "transfer" is a significant source of confusion in this case. The different meanings ascribed to this word explain the disparate conclusions reached by the parties and explains why Rausch Creek and the Court seem to have irreconcilable interpretations of the APA, the Sale Order, the Stipulation, and the Court's opinions in *Kimmel's I* and *Kimmel's II*. The same is true, though to a lesser extent, regarding the proper interpretation and application of

§ 86.56. With that context in mind, the Court finds that Rausch Creek has not met the standard for a stay but agrees with Rausch Creek that there is a likelihood of success on the merits insofar as the Court previously concluded that: (i) § 86.56 was the only way to effectuate transfer of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order, (ii) Rausch Creek had to seek transfer of the Permits, or the rights granted thereunder, pursuant to the APA and Sale Order under § 86.56, and (iii) reclamation liability would be assumed by Rausch Creek as a matter of law pursuant to § 86.56. The Court, therefore, suggests that the proper remedy would be for this Court's Order in *Kimmel's II* to be vacated and the matter remanded to correct the above errors and to address the potentially unresolved (and primary) issue of responsibility for pre-existing reclamation liability.

For the foregoing reasons, Rausch Creek's Motion for Stay Pending Appeal is denied. An appropriate order will follow.

Dated: December 3, 2021

By the Court,

*Henry W. Van Eck*
Henry W. Van Eck, Chief Bankruptcy Judge (MS)