**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| KIMMEL'S COAL AND PACKAGING, INC., | : | Case No. 18-bk-01609 (HWV) |
| MEADOWBROOK COAL COMPANY, INC., | : | Case No. 18-bk-02506 (HWV) |
| MICHAEL COAL COMPANY, INC., | : | Case No. 18-bk-02507 (HWV) |
| KIMMEL'S POWER PLANT SERVICES, INC., | : | Case No. 18-bk-02509 (HWV) |
| KIMMEL'S MINING COMPANY, INC. | : | Case No. 18-bk-02510 (HWV) |
| | : | |
| Debtors-in-Possession | : | Jointly Administered under |
| | : | Docket No. 18-1609 |
| FULTON BANK, N.A., | : | |
| | : | Motion to Compel Compliance with |
| Movants | : | Sale Order and for Declaratory |
| | : | Relief Regarding Security Interests |
| v. | : | of Fulton Bank, N.A. |
| | : | |
| KIMMEL'S COAL AND PACKAGING, INC., | : | |
| | : | |
| Respondents | : | |

## Opinion

This matter is on remand from the United States District Court for the Middle District of

Pennsylvania (Doc. 607)[1] regarding the Motion of Fulton Bank, N.A. to Compel Compliance

with Sale Order and For Declaratory Relief Regarding Security Interests of Fulton Bank, N.A.

(Doc. 369) (the "Motion to Compel") and its Motion for Order of Contempt Against Rausch

Creek, L.P. (Doc. 494) (the "Motion for Contempt"). For the following reasons, both motions

will be denied. Fulton Bank, N.A.'s request for damages will also be denied without prejudice.[2]

## I.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

Fulton Bank, N.A. ("Fulton Bank") seeks to enforce this Court's September 4, 2018 Order

---

[1] For ease of reference, the Court utilizes the page numbers from the CM/ECF footer.
[2] The request for damages does not appear in either the Motion to Compel or the Motion for Contempt. Rather it was raised for the first time in one of the Briefs later submitted by Fulton Bank, N.A.

1

approving sale of the Debtors'[3] assets free and clear of liens pursuant to § 363(f) of the

Bankruptcy Code (the "Sale Order"). (Doc. 168.) A bankruptcy court retains jurisdiction to

enforce its orders, *Cox v. Zale Del., Inc.,* 239 F.3d 910, 917 (7th Cir. 2001), and the Sale Order

entered by this Court expressly retained such jurisdiction. (Doc. 168, p. 9.) Both a motion to

approve a sale of property and a motion seeking to enforce that order are proceedings "arising

under title 11" and are therefore core proceedings. 28 U.S.C. § 157(b)(1), (b)(2)(N).

Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b).

## II.    FACTS AND PROCEDURAL HISTORY

This matter is related to the Court's prior decision of *In re Kimmel's Coal & Packaging,*

*Inc.*, No. 18-1609, 2020 WL 5576960 (Bankr. M.D. Pa. June 1, 2020)[4] and the decision of the

United States District Court for the Middle District of Pennsylvania in *Rausch Creek Land, L.P.*

*v. Fulton Bank, N.A.*, 642 B.R. 706 (M.D. Pa. 2022),[5] familiarity with which are presumed.

Shortly after the Court issued *Kimmel's I*, Rausch Creek unexpectedly withdrew a permit

application it filed in 2019 (the "2019 Application"). The 2019 Application was previously filed

by Rausch Creek pursuant to a Stipulation[6] with Fulton Bank resolving the Motion to Compel.[7]

(Doc. 411.) In its place, Rausch Creek filed a new permit application significantly reducing the

---

[3] The Debtors are Kimmel's Coal and Packaging, Inc. ("Debtor" or "Kimmel's Coal"), Meadowbrook Coal Company, Inc. ("Meadowbrook"), Michael Coal Company, Inc. ("Michael Coal"), Kimmel's Power Plant Services, Inc. ("Kimmel's Power"), and Kimmel's Mining Company, Inc. ("Kimmel's Mining" and collectively with Kimmel's Coal, Meadowbrook, Michael Coal, Kimmel's Power, and Kimmel's Mining, the "Debtors").
[4] Hereinafter referred to as "*Kimmel's I.*"
[5] Hereinafter referred to as "*Rausch Creek v. Fulton Bank.*"
[6] Unless otherwise defined herein, capitalized terms used herein will have the same meaning they do in *Kimmel's I.*
[7] Defined in the Debtor's Schedules and in the APA as certain real estate identified as Parcel Nos. 69-012-004, 69-008-049, 69-008-048, 69-008-041, 69-008-042, 69-012-003, and 69-008-054 and 69-008-010 all located in Dauphin County and Schuylkill County, Pennsylvania. (Doc. 117, Schedules A/B Assets at 21; Doc. 107, Ex. A. at 7.)

2

reclamation liability[8] it assumed in the 2019 Application (the "2020 Application"). (Doc. 553, p. 4.) Fulton Bank filed its Motion for Contempt in response because it believed the 2020 Application did not comply with the terms of the Stipulation. (Doc. 494.) Rausch Creek, the PA DEP, and the Trustee each responded to the Motion for Contempt and a hearing thereon and on the Motion to Compel was held on March 16, 2021. The issue presented at that hearing concerned the extent to which after closing Rausch Creek was obligated under the APA[9] to apply for transfer of the permits and to assume liability for reclamation of the Permitted Land,[10] including replacement of the Fulton Letters of Credit.[11]

Following the hearing, this Court issued an opinion (hereinafter referred to as "Doc. 576" or "*Kimmel's II*") finding that:

> [U]nder the plain terms of the Sale Order and the APA and the interplay with state law, the parties agreed that Rausch Creek would apply for transfer of as much of the Permits as it could in accordance with [25 Pa. Code] § 86.56 and that any such application, if approved, would require Rausch Creek to assume liability for reclamation of the land commensurate thereto and to post a new bond in its name and in an amount no less than the amount of the Fulton Letters of Credit at the time of transfer.

(Doc. 576, p. 24.) An order was contemporaneously entered consistent with the foregoing. (Doc. 577).

On October 12, 2021, Rausch Creek filed a notice of appeal of *Kimmel's II*. In its appeal, Rausch Creek argued, among other things, that the bankruptcy court committed an error of law

---

[8] When discussing "reclamation liability" or "existing reclamation liability" in this Opinion, the Court is referring to reclamation liability resulting from mining activities on the Real Property before the closing date.
[9] Defined as an Asset Purchase Agreement dated June 1, 2018, between the Debtors as sellers, and Rausch Creek as buyers, for the sale of all Debtors' Real Property and substantially all its' personal property, including the permits.
[10] Defined as the Real Property together with the as the land previously leased by the Debtors from the Dale Coal Company in connection with the operation of the White Pine Mine and Branchdale Mine (the "Leased Property").
[11] Under state law, the Debtors were required to file bonds for the benefit of the Commonwealth of Pennsylvania to secure certain reclamation obligations associated with the two mining permits. *See* 52 PA. CONS. STAT. § 1396.4(d); *See also* 52 PA. CONS. STAT. § 1396.4(a)(2). These bond requirements were satisfied by two Irrevocable Standby Letters of Credit issued by Fulton Bank in the amount of $141,498.00 and $1,038,528.00, respectively (collectively, the "Fulton Letters of Credit"). (DOC. 466, Ex.'s A and B.)

3

or abused its discretion when it: (1) ruled that mining permits can be partially transferred under Pennsylvania law; (2) interpreted the APA to require a partial transfer of a mining permit in contravention of Pennsylvania's mining permit transfer law; and (3) placed the burden of proof upon Rausch Creek to show whether a mining permit can be partially transferred. (Doc. 580.) Thereafter, Rausch Creek, the Trustee, Fulton Bank, and the PA DEP each submitted briefs for consideration by the District Court.

On August 26, 2022, the District Court issued its opinion and order in *Rausch Creek Land v. Fulton Bank*. (Doc. 607.) In its decision, the District Court observed that it was "apparent from the record that there [is] a fundamental misunderstanding between the bankruptcy court and the parties with respect to the definition of the term 'transfer' in the context of Rausch Creek's purported purchase of the Debtors' assets in the APA, including its permits." *Rausch Creek Land,* 642 B.R. at 710. The District Court continued by noting that "the bankruptcy court should be the first to address these issues" because "a different decision by the bankruptcy court on remand could moot the issues presently on appeal." *Id.* Thus, the District Court entered an order granting the appeal in part, vacating this Court's September 28, 2021 order, and remanding the matter for further proceedings consistent with the foregoing. *Id.*; (Doc. 607.)

This Opinion issues in place of *Kimmel's II* following additional proceedings conducted by this Court as anticipated by the District Court in *Rausch Creek Land v. Fulton Bank*.

III.   **Discussion**

The central question presented here, as it was in *Kimmel's II*, is whether Rausch Creek is obligated under the APA or Sale Order to apply for mining permits covering all or some portion of the Permitted Land and to assume liability for reclamation of same, including replacement of the Fulton Letters of Credit. There are only two ways Rausch Creek can be so obligated. The

4

first is by agreement of the parties as expressed in the Sale Order, APA, or Stipulation[12] (collectively, the "Agreements"). The second is by operation of state law pursuant to § 86.56 (Transfer) of 25 Pa. Code §§ 1.1 *et seq.* (the "DEP Regulations" or "State Law") which, if applicable, compels assumption of existing reclamation liability whenever rights under a permit are transferred, assigned, or sold. *See* 25 Pa. Code § 86.56(c)(2). A secondary question involves whether Fulton Bank should be awarded damages pursuant to its Motion for Contempt as a result of Rausch Creek's alleged "use" of its Letters of Credit.

> **A.** **No Assumption of Reclamation Liability Required by the Agreements Absent a "Transfer" of the Permits Pursuant to § 86.56**

Rausch Creek is not obligated under the plain language of the APA, Sale Order, or Stipulation to assume liability for reclamation of any portion of the Permitted Land unless the permits are transferred pursuant to § 86.56. This is so because there is no sufficiently definite language in the APA, Sale Order, or Stipulation to justify specific enforcement of an obligation on the part of Rausch Creek to do so.

The complexities of Pennsylvania law on contract interpretation were explained in the Prior Decision and analyzed in depth by the Third Circuit in *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79 (3d Cir. 2001).[13] Briefly restated here, "[t]he goal of interpreting . . . any . . . contract, is to determine the intent of the parties." *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011).

> Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

---

[12] As noted by the Court in *Kimmels' I*, "the Sale Order and its incorporated terms of sale must be construed according to general principles of contract law." 2020 WL 5576960 at *6. For the reasons stated therein, the same is true for the Stipulation. *Id.* at *6, n. 14.

[13] Given the length of the explanation of Pennsylvania law in both, the Court incorporates them here by reference without restating them in full. *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 92–96; *Kimmel's I*, 2020 WL 5576960 at *6.

*In re Old Summit Mfg.*, LLC, 523 F.3d 134, 137 (3d Cir. 2008) (quoting *Dep't of Transp. v. Pa.*

*Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005)). "[A] contract

should be read so as to give meaning to all of its terms when read as an entirety." *Contrans, Inc.*

*v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987). "The meaning of a particular

phrase is not properly determined by considering the. . . phrase in isolation but by reading it in

harmony with the rest of the contract." *Id*. As a preliminary matter, then, courts interpreting a

writing must first determine whether the subject language is clear or ambiguous. *Allegheny Int'l,*

*Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994).

> A contract is ambiguous if it is reasonably susceptible of different constructions
> and capable of being understood in more than one sense. The court, as a matter of
> law, determines the existence of an ambiguity and interprets the contract whereas
> the resolution of conflicting parol evidence relevant to what the parties intended by
> the ambiguous provision is for the trier of fact.

*In re Old Summit Mfg.*, LLC, 523 F.3d at 137 (quoting *Hutchison v. Sunbeam Coal Corp.*, 513

Pa. 192, 519 A.2d 385, 390 (1986)).

With the above principles in mind, the Court now considers the language of the APA and

Sale Order before separately considering the language of the Stipulation.

### 1. Plain Meaning of the APA and Sale Order

Rausch Creek is correct in its assertion that it did not take on any existing reclamation

liability under the APA or Sale Order except to the extent the permits are "transferred" to it

under § 86.56 of Pennsylvania mining law. This is so for several reasons. First, the plain

language of the APA and the Sale Order unambiguously demonstrates that the parties intended a

transfer of the permits and the rights thereunder from the Debtors to Rausch Creek under

Pennsylvania mining law. Second, under Pennsylvania mining law, the transfer of a permit or the

rights thereunder may not be made except as provided in 25 Pa. Code § 86.56, and transfers thus

6

made require the new operator to assume existing reclamation liability. Third, the permits and the rights thereunder have not been transferred and are not transferrable to Rausch Creek under § 86.56. Finally, there is no sufficiently definite language in the APA or Sale Order obligating Rausch Creek to assume any existing reclamation liability associated with the permits or the Permitted Land in the absence of a transfer pursuant to § 86.56.

### a). Intention to "Transfer" the Permits

The Sale Order provides that "[a]ll *transfers* of the . . . Permits as set forth in the Auction Motion and Sale Motion are approved." (Doc. 168, p. 5) (emphasis added). The Sale Motion, which is incorporated into the Sale order, likewise provides that "Rausch Creek is also accepting the *transfer* of the following mining Permits . . . White Pine Coal Company . . . [and] Branchdale Bank." (Doc. 163, p. 6) (emphasis added). Finally, the Auction Sale Motion refers to the word "transfer" or some variation thereof in relation to the word "permit" no less than 21 times. (Doc. 107, ¶ ¶ 15, 26, 42, 48, and 52.) The language in these documents is not ambiguous, defective, obscure, or insensible and the intent of the parties can thus be determined from the express language of the Sale Order itself without resort to extrinsic aids or evidence. The Court finds the frequent appearance of the word "transfer" in its various forms when considered in context demonstrates the parties intended a transfer of the permits from the Debtors to Rausch Creek under Pennsylvania mining law.[14] Based upon this finding, and for the reasons set forth by the Court in the remainder of this Opinion, *infra*, the Court concludes that the Sale Order clearly contemplates a "transfer" of the permits, or the rights granted thereunder, under Pennsylvania mining law.

---

[14] The parties do not dispute the necessity of governmental authorization to approve any transaction concerning the subject permits. (See, *e.g.*, Doc. 107, ¶ ¶ 15, 26, 48 52 ; Doc. 107, Ex. A, ¶ ¶ 2.1(c), 5.11(a), 8.6.) Thus, the interplay between the APA and Pennsylvania mining law was clearly understood by the parties throughout this process.

7

The same is true for the APA. Indeed, this Court has already concluded that the language of the APA contemplates a "transfer" of the Permits. *See Kimmel's I*, 2020 WL 5576960, at *8–9 n.17 ("the language of . . . the APA can only be interpreted as providing for transfer of the Permits rather than a sale, assignment, conveyance or other delivery of the Debtors' right, title or other interest under same."). This conclusion was based upon two findings. First, the Court held the unambiguous language found in paragraph 2.1(c) of the APA "describes the only terms and conditions under which the Permits or the liabilities associated therewith could have been sold, transferred, assigned, conveyed or otherwise delivered to Rausch Creek . . . under the APA, if at all." *Id.* at *8. Second, the Court held that according to the plain language of paragraph 2.1(c), "the Debtors agreed to transfer the Permits to Rausch Creek at Closing, but only to the extent the Permits were 'transferable' to Rausch Creek as they existed at that time." *Id.* at *9. The Court reaffirms these holdings from *Kimmel's I* and again concludes that the language of the APA clearly contemplates a "transfer" of the Permits.

Fulton Bank, the PA DEP, and the Trustee do not necessarily disagree with this conclusion. Instead, they argue the plain language of the APA establishes that the word "transfer" is not a technical term that can only be understood within the context of § 86.56, but instead is a synonym for "convey" which has a broader meaning. (Doc. 616, p. 3; Doc. 617, p. 5; Doc. 619.) This broader meaning, they contend, changes the meaning of the APA and the impact of § 86.56 as they relate to transfer of the permits, and expands the options available under State Law to accomplish the "transfer" beyond those exclusively set forth in § 86.56. (Doc. 616, p. 2; Doc. 617, p. 5.) The Court rejects this argument for several reasons.

Case 1:18-bk-01609-HWV    Doc 622    Filed 02/17/23    Entered 02/17/23 15:40:15    Desc
Main Document    Page 8 of 22

To begin, the word "transfer" means "to convey from one person, place, or situation to another" or to "to cause to pass from one to another."[15] Similarly, the word "convey" means "to transfer or deliver to another" or "to cause to pass from one place or person to another."[16] The Court observes that the word "convey" is part of the definition of the word "transfer" just as the word "transfer" is part of the definition of the word "convey." The phrase "cause to pass" is common to both. Given these observations, it is clear that substituting one word for the other in the context of the APA (or § 86.56) does not alter the meaning or impact of the language providing it context. Simply put, the Court sees no difference between the use of either word in the context of the APA (or § 86.56) and considers them entirely interchangeable without impact as they relate to this matter. The Court therefore rejects the notion that substituting the word "convey" for "transfer" as suggested by Fulton Bank, the PA DEP, and the Trustee somehow expands the options available under State Law to accomplish the "transfer" beyond those exclusively set forth in § 86.56. Even if it did, it would not require Rausch Creek to assume reclamation liability because State Law will not impose such an obligation in the absence of a full transfer of the rights under a permit pursuant to § 86.56. (See Sections III.A.1.b and III.B. of this Opinion, *infra*.)

The Court concludes that the APA and Sale Order unambiguously demonstrate an intention to transfer or convey the permits and the rights thereunder from the Debtors to Rausch Creek in accordance with the terms and conditions set forth therein.

---

[15] *Transfer*, Merriam-Webster's Collegiate Dictionary, https://www.merriam-webster.com/dictionary/transfer.
[16] *Convey*, Merriam-Webster's Collegiate Dictionary, https://www.merriam-webster.com/dictionary/convey.

Case 1:18-bk-01609-HWV    Doc 622    Filed 02/17/23    Entered 02/17/23 15:40:15    Desc
Main Document    Page 9 of 22

**b).     Transfer Must Occur Pursuant to § 86.56, if at all, and
Includes Existing Reclamation Liability if it does**

In *Kimmel's I*, this Court held that under Pennsylvania mining law, the rights granted

under a permit are not severable therefrom and such rights may not be transferred, assigned, or

sold except as provided in § 86.56. *Kimmel's I*, at *7, *13. This holding was based upon the clear

and unambiguous language of § 86.56, which plainly provides that "[a] transfer, assignment or

sale of the rights granted under a permit may not be made except as provided in this section." 25

Pa. Code § 86.56. The language of § 86.56 is unmistakable in its meaning and is not reasonably

susceptible of different constructions or capable of being understood in more than one sense. Nor

is the disposition required by its text absurd. Thus, it is the duty of this Court to enforce it

according to its terms. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1,

6 (2000) ("Where a statute's language is plain, the sole function of the courts—at least where the

disposition required by the text is not absurd—is to enforce it according to its terms.") (internal

quotation marks omitted).

Also, it is uncontested that any permit transfer made pursuant to § 86.56 requires the

transferee to assume existing reclamation liability associated therewith.[17] Section 86.56(c) allows

a permittee to transfer a permit or the rights granted thereunder to another, but only if the

transferee, among other things, "[a]ssumes the liability for reclamation, water pollution, planting

and other responsibilities under the law, the rules and regulations and the terms and conditions of

the permits from the date of original issuance of the permits." In addition, § 86.167 provides that

before a permit is transferred under § 86.56, "the successor operator shall post a new bond in an

appropriate amount determined by the Department under this subchapter but in no case less than

---

[17] Rausch Creek does not contest this requirement. (Doc. 618, p. 5.)

the amount of bond on deposit with the Department, in the successor operator's name, assuming all accrued liability for the permit area." The language of these sections is unambiguous.

In view of the foregoing, the Court concludes that under Pennsylvania law a "transfer" of mining permits, or the rights granted thereunder, must be made pursuant to §86.56 and that any such transfer requires the new operator to assume existing reclamation liability. Because the APA and Sale Order clearly contemplate a transfer of the permits and the rights thereunder from the Debtors to Rausch Creek, it necessarily follows that the transfer may not be made except as provided in § 86.56 and that Rausch Creek must assume existing reclamation liability as part of that transaction.

### c). Permits have not been Transferred and are not Transferrable under § 86.56

The Court has already found the permits were not transferred and were not even "transferrable" to Rausch Creek at closing under § 86.56. See *Kimmel's I*, 2020 WL 5576960, at *9 and n. 17 ("It has already been established that the rights granted under a permit may not be separately sold, assigned, conveyed or delivered to another, except through a transfer of the actual permit by application approved by the PA DEP. 25 Pa. Code § 86.56" and "[a]ccordingly, the Court has little difficulty finding that the Permits as they existed on the Closing Date were not transferred and were not 'transferrable' to Rausch Creek at Closing under Paragraph 2.1(c) of the APA."). The Court now likewise finds, and the parties do not dispute, that no such transfer had occurred through the date of argument in this matter. (Hr'g held Dec. 6, 2022, at 12:06–12:10 PM.) Moreover, there is a consensus among the parties that the permits remain "not transferable" under § 86.56 because partial permit transfers are not allowed under that section and the permits cannot be transferred in full due to the absence of a legal right to enter and commence coal mining activities upon the Leased Property. (Doc. Doc. 616, p. 3; Doc. 617, pp.

11

2-3, n. 1; Doc. 618, p. 3; Doc. 619.) Indeed, the record bears this out. (Hr'g held Dec. 6, 2022, at 1:11:00–1:11:50 PM.)

In view of the foregoing, the Court concludes that the permits have not been transferred and indeed, are not even transferable to Rausch Creek under § 86.56.

### d). No Sufficiently Definite Language to Assume Reclamation Liability Absent a § 86.56 Transfer

In their most recent submissions to the Court, Fulton Bank, the PA DEP, and the Trustee argue Rauch Creek is obligated under the APA and Sale Order to apply for a new permit covering a diminished area that includes the Real Property and its existing reclamation liability but excludes the Leased Property and the reclamation liability associated therewith. (Doc. 616, pp. 2–3; Doc. 617, pp. 3, 8; Doc. 619.) Rausch Creek disagrees and maintains that it "never agreed to expressly take on any reclamation liability under any sale document, motion or order unless a mining permit was transferred" pursuant to § 86.56. (Doc. 618, p. 5.) Rausch Creek is correct.

As previously noted by the Court, the APA, and Sale Order "must be construed according to general principles of contract law." *Kimmel's I*, 2020 WL 5576960 at *6. Thus, the argument advanced here by Fulton Bank, the PA DEP, and the Trustee is grounded in contract law and, more specifically, upon enforcement of the APA. It is hornbook law that "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Lazer & Lazer Corp. v. Agronomed Pharms. LLC*, No. CV 21-2253, 2022 WL 3030726, at *9 (E.D. Pa. Aug. 1, 2022) (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998)). Moreover, it is a fundamental underpinning of our legal system that one party will not be held responsible for the debt of another unless such an undertaking is made "clear and explicit."

*See, e.g., United States v. Rodgers*, 461 U.S. 677, 697 (1983); *Russell v. Clark's Ex'rs*, 11 U.S. 69 (1812) ("To charge one person with the debt of another, the undertaking must be clear and explicit.").

At this stage, the parties do not dispute a manifest intention on the part of Rausch Creek to be bound by the APA. The question presented is thus limited to whether the APA contains "sufficiently definite language" to warrant "specific enforcement" of an obligation on the part of Rausch Creek to assume any existing reclamation liability associated with the permits in the absence of a transfer pursuant to § 86.56. To answer this question, the Court has closely examined the APA and Sale Order and found no express language obligating Rausch Creek to do so. Fulton Bank, the PA DEP, and the Trustee were likewise unable to locate any such language when directly asked to do so by the Court. (Hr'g held December 6, 2022, at 12:20–12:23; 12:30–12:33; 12:38–12:41.) Instead, they argue this obligation should be read into the APA. The Court will not do so.

In direct contrast to the foregoing, the Court has identified "sufficiently definite language" in the APA to warrant "specific enforcement" of language excluding any obligation to assume existing reclamation liability associated with the permits in the absence of a transfer pursuant to § 86.56. Consider the following language in paragraph 2.6 of the APA:

> Excluded Liabilities . Notwithstanding anything contained in this Agreement to the contrary, Buyer shall not assume or be obligated to pay, perform or otherwise discharge any other liability of Sellers whatsoever or any liabilities or obligations constituting an Encumbrance upon the Purchased Assets, regardless of whether any such liabilities or obligations are absolute or contingent, liquidated or unliquidated, or otherwise. Sellers shall remain liable for all liabilities other than the Assumed Liabilities (collectively, the **"Excluded Liabilities"),** including any obligations arising prior to Closing . . .

(Doc. 107-1, p. 14 (bold and underline in original).) In addition, Rausch Creek has identified language in the Sale Order that "specifically indicates that except as 'expressly' set forth in the

Case 1:18-bk-01609-HWV    Doc 622    Filed 02/17/23    Entered 02/17/23 15:40:15    Desc
Main Document    Page 13 of 22

[APA], the buyer is '…not expressly or impliedly agreeing to assume any liabilities of the Debtors.'" (Doc. 618, p. 5–6.)

The above language from the APA and Sale Order is unmistakable in its meaning and is not reasonably susceptible of different constructions or capable of being understood in more than one sense. The provision that "Buyer shall not assume or be obligated to pay, perform or otherwise discharge any other liability of Sellers whatsoever . . . regardless of whether any such liabilities or obligations are absolute or contingent, liquidated or unliquidated, or otherwise" clearly includes existing reclamation liability and is "sufficiently definite" to be "specifically enforced." The same is true for the provision that "Sellers shall remain liable for all liabilities other than the Assumed Liabilities[18] . . . including any obligations arising prior to Closing." For the avoidance of any doubt, the above language controls "[n]otwithstanding anything contained [in the APA] to the contrary."

Nor is the disposition required by the text of these provisions absurd. To the contrary, it is a natural and foreseeable consequence of any transaction involving the transfer or conveyance of the rights granted under a mining permit that existing reclamation liability must be assumed by the new operator, remain with the existing operator, or otherwise be provided for—perhaps by an existing bond. If the parties intended Rausch Creek to assume the existing reclamation liability in all circumstances, they could have included sufficiently definite language in the APA to ensure that consequence. They did not. Thus, because the above-quoted language from the APA and Sale Order is unmistakable in its meaning and is not reasonably susceptible of different

---

[18] The Assumed Liabilities referenced here are defined in paragraph 2.5 of the APA as "(i) the obligations of Sellers under the Assumed Contracts arising after the Closing Date . . . (ii) the obligation to pay all Cure Amounts with respect to such Assumed Contracts and (iii) the Real Estate Taxes." (Doc. 107-1, p. 14.), The "Assumed Contracts" and "Cure Amounts" referenced therein do not involve or touch upon the reclamation liabilities. (Doc. 107-1, p. 8 ¶ 2.3.) Thus, the Assumed Liabilities are not relevant to the Court's inquiry here.

14

constructions or capable of being understood in more than one sense, and because the disposition required by the text of these provisions is not absurd, it is the duty of this Court to enforce it according to its terms.

Fulton Bank, the PA DEP, and the Trustee disagree with the foregoing and advance several arguments in support of their position, each of which miss the mark. First, in addition to the argument already considered and rejected in Section III.A.1.a of this Opinion, *supra*, Fulton Bank, the PA DEP, and the Trustee argue the word "transfer" is not a defined term in the APA and is used interchangeably therein with other words like "replace," "obtain," "relinquish," and "receipt of new" when describing the transaction as it relates to the permits. (Doc. 616, p. 2; Doc. 617, p. 5.) The common understanding of these other words, they reason, is inconsistent with the plain meaning of "transfer" which, in turn, makes it clear the parties understood that a "transfer" pursuant to § 86.56 may not be possible and Rausch Creek may thus have to obtain new permits to achieve the intent of the agreement. Lastly, they argue the phrase "to the extent transferable" in context of § 2.1(c) of the APA "indicates that the portion of the permits that could be transferred must be transferred."[19] (Doc. 617, p. 7.) These arguments fail for several reasons.

First, even if the Court were to accept the position advocated by the parties here (and for avoidance of doubt, the Court does not), they nonetheless fail because they do not establish an obligation on the part of Rausch Creek to pursue and assume existing reclamation liability under either State Law or the Agreements. As more fully set forth in the next section of this Opinion, *infra*, State Law does not impose an obligation upon Rausch Creek to assume existing

---

[19] The parties also make an argument based upon public policy. They argue "the purchaser of the Debtors' assets [must] also take responsibility for the Debtors' outstanding environmental obligations" because doing so, among other things, "is consistent with the public interest and the policies and goals of the Bankruptcy Code and the laws administered by the Department." (Doc. 616, pp. 3–4.) This argument—though persuasive on its face—is insufficient to overcome the express language of the APA, Sale Order, and Stipulation. The Court therefore rejects this argument as insufficient, without more, to overcome the Court's obligation to enforce the APA according to its plain language.

15

reclamation liability for any of the Permitted Land absent a full transfer of the rights granted under the permits pursuant to § 86.56. This holding is uncontroversial as the parties acknowledge this to be the case in their filings. (Doc. 616, p. 3; Doc. 617, p. 9; Doc. 618, 6.) Second, the arguments ignore the standard needed to establish a contractual obligation on the part of Rausch Creek to assume existing reclamation liability in the absence of a transfer pursuant to § 86.56 (*i.e.*, "sufficiently definite language" to warrant "specific enforcement").[20] Finally, the arguments do not address the language of paragraph 2.6 of the APA, which the Court finds to be "sufficiently definite" to warrant "specific enforcement" excluding any obligation on the part of Rausch Creek to assume existing reclamation liability associated with the permits in the absence of a transfer pursuant to § 86.56. For these reasons, the Court rejects each of the arguments raised by Fulton Bank, the PA DEP, and the Trustee as identified above.

The Court finds the APA and Sale Order lack sufficiently definite language to warrant specific enforcement of an obligation on the part of Rausch Creek to assume existing reclamation liability associated with the permits or the Permitted Land in the absence of a transfer pursuant to § 86.56. Indeed, the only sufficiently definite language that warrants specific enforcement on this issue is found in paragraph 2.6 of the APA, which excepts Rausch Creek from any such obligation.

## 2.      No Assumption of Reclamation Liability Under Stipulation

Fulton Bank points to the following language from the Stipulation as a basis for requiring Rausch Creek to provide its own letters of credit governing preexisting reclamation liability:

> Rausch Creek will file an application for a new permit that replaces all areas where Rausch Creek owns both surface and mineral rights within the White Pine

---

[20] Even if it did, which it does not, the argument does not meet the "clear and explicit" condition alluded to in *Rodgers*, 461 U.S. 677 and *Russell*, 11 U.S. 69 ("To charge one person with the debt of another, the undertaking must be clear and explicit.").

16

> Mine/Baby Boy Jarvis Permit, No. 54890102, not later than July 15, 2019 and will
> prosecute that application diligently.

(Doc. 411, p. 3 at ¶ 1.) Just like the language of the APA, Sale Order, and § 86.56, the above

language from the Stipulation is unmistakable in its meaning and is not reasonably susceptible of

different constructions or capable of being understood in more than one sense. Nor is the

disposition required by the plain text of the Stipulation absurd. To the contrary, the provision

clearly requires Rausch Creek to "file an application for a new permit" on or before July 15,

2019, covering the Real Property (only) and to pursue that application with a steady, earnest, and

energetic effort until finished (*i.e.*, "diligently"). The record demonstrates that Rauch Creek did

so beginning with its 2019 Application which was filed on July 15, 2019. Though it subsequently

withdrew that application on June 8, 2020, it promptly filed its 2020 Application which complied

with the Stipulation and pursued that application until it was granted by the PA DEP.

Accordingly, Rausch Creek has complied with the unambiguous terms of the Stipulation.

Fulton Bank, the PA DEP, and the Trustee disagree, however, and argue that Rausch

Creek is not in compliance with the Stipulation because it has not assumed any existing

reclamation liability as part of its 2020 Application. As with the language of the APA and Sale

Order, the Court has examined the Stipulation and finds no sufficiently definite language

warranting specific enforcement of an obligation on the part of Rausch Creek to assume any

existing reclamation liability as part of its "application for a new permit." It simply does not

exist. This is impactful because it is undisputed that, unlike a transfer or conveyance pursuant to

§ 86.56, the filing of an application for a new mining permit under Pennsylvania law does not

require the applicant to assume existing reclamation liability associated with a prior permit or the

land subject to that permit. (Doc. 616, p. 3; Doc. 617, p. 8; Doc. 618, 6.) As such, there is no

obligation on the part of Rausch Creek to assume existing reclamation liability under either the

unambiguous terms of the Stipulation or Pennsylvania mining law. Because no other authority imposing such an obligation exists, the Court concludes that Rauch Creek has complied with the Stipulation and is not in contempt of the Order approving same.

Nor is the above conclusion absurd. To the contrary, a Stipulation is merely an agreement or covenant between two or more parties to do or not to do something. As such, it is a natural and foreseeable consequence that the express language of a Stipulation will be observed, and its plain meaning will be enforced. If the parties to a Stipulation desire a specific event to happen or not to happen, they should place sufficiently definite language therein to warrant specific enforcement of that event. The fact that one or more parties may not be satisfied with the outcome here, or that they may have expected a different result, is not remotely absurd.

In view of the foregoing, the Court finds that although Rausch Creek is obligated under the Stipulation to apply for one or more permits covering the Real Property, it is not obligated thereunder to assume liability for reclamation of same, including replacement of the Fulton Letters of Credit. The Court further finds that Rausch Creek's 2020 Application complies with plain language of the Stipulation and Rausch Creek is therefore not in violation of the Consent Order approving same. As such, the only issue left for the Court to decide is whether Rausch Creek is obligated to assume existing reclamation liability by operation of state law pursuant to § 86.56 (Transfer) of the DEP Regulations.

**B.      Rausch Creek is not Obligated to Apply for Permits or Assume Reclamation Liability by Operation of State Law Pursuant to § 86.56**

In *Kimmell's II,* the Court focused exclusively on Rausch Creek's obligation to apply for and assume reclamation liability under the Agreements within the context of § 86.56. While this required consideration of the parties' differing interpretations of the term "transfer" as used in the APA and Sale Order, it did not require separate consideration of the issue of reclamation

18

liability outside of an § 86.56 transfer. The Court focused its analysis this way for two reasons. First, it believed that § 86.56 was the only way Rausch Creek could lawfully obtain mining rights identical to those held by the Debtors under the permits at closing. Second, the Court believed those rights could be partially transferred under § 86.56. Based on these beliefs, the Court issued *Kimmel's II* finding as indicated above. (Doc. 576, p. 24.) The Court now acknowledges these beliefs were incorrect.

Specifically, the Court realizes that a transfer under § 86.56 is not the only way Rausch Creek can lawfully obtain mining rights identical to those held by the Debtors under the permits at closing. Indeed, Rausch Creek can accomplish this by applying for and obtaining a new permit pursuant to §§ 86.11–86.18 ("General Requirements for Permits and Permit Applications). This is significant because, unlike an § 86.56 transfer, a new permit issued pursuant to §§ 86.11–86.18 does not compel the new permit holder to assume existing reclamation liability associated with the permitted land or with prior permits covering same. This is so even if the land covered by the new permit and the rights granted thereunder are identical to those covered and granted under a prior permit (or permits), as is the case here. In addition, the Court now accepts that § 86.56 transfers are an "all or nothing" proposition. That is, a transfer made pursuant to § 86.56 must fully convey all rights granted under a permit or none at all—partial permit transfers (or a partial transfer of the rights granted thereunder) are not allowed under § 86.56. This is meaningful because the parties here agree that the rights granted under the permits cannot be fully conveyed to Rausch Creek as there is no access to the Leased Property.

Consequently, and distinct from the Court's view in *Kimmel's II,* the Court now concludes that State Law does not impose an obligation upon Rausch Creek to assume existing reclamation liability for any of the Permitted Land unless a full transfer of the rights granted

19

under the permits is made pursuant to § 86.56. Because it is uncontested that a full transfer of the rights granted under the permits at issue here cannot be made pursuant to § 86.56, it follows that State Law does not impose an obligation upon Rausch Creek to assume existing reclamation liability for any of the Permitted Land.

### C. The Motion for Damages is Denied Without Prejudice.

Fulton Bank seeks damages for Rausch Creek's alleged "use" of its Letters of Credit. Fulton Bank argues that Rausch Creek is responsible for reclamation liability at a portion of the Real Property known as the "Primrose Pit" for all its mining activity from September 2018 through April 2019. The Court finds that this issue is not ripe for adjudication because there is presently no claim against the Letters of Credit. Until that occurs, Fulton Bank cannot demonstrate the requisite injury required for adjudication. Accordingly, the motion for damages is denied without prejudice.

## IV. Conclusion

The Court has little doubt based upon the record before it—including representations, statements, and filings made by Rausch Creek itself—that the parties believed Rausch Creek would assume all preexisting reclamation liability associated with any permit transferred as part of this transaction.[21] However, the Court is equally confident that the parties *presumed* such assumption of liability would occur pursuant to § 86.56 exclusively and that all the permits would be transferred without complication. Thus, they made no provision in the APA, Sale Order, or Stipulation requiring Rausch Creek to assume reclamation liability in the absence of

---

[21] Even the Court believed Rausch Creek would be assuming such liability, or it might not have approved the sale in the first instance. Unfortunately, the Court was not advised (and was not independently aware) of the specific nuances of mining law discussed herein at the time the sale was approved. For example, the Court did not fully appreciate Rausch Creek's ability to obtain rights identical to those granted to the Debtors under the permits absent a transfer pursuant to § 86.56, or that partial permit transfers were prohibited under that section. Thus, the Court had no ability to foresee the current circumstances.

20

such a transfer. This assumption proved incorrect, and the Court is left with no alternative but to enforce the language of the APA, Sale Order, and Stipulation as negotiated, drafted, executed, and considered by the parties. If the Debtors or Rausch Creek intended a different result, they could have placed sufficiently definite language therein to warrant specific enforcement of that result. They did not.

Moreover, Fulton Bank and the PA DEP, as parties affected by entry of the Sale Order, had a similar opportunity to make such provisions by objecting to the Sale Motion or entry of the Sale Order, both of which were unopposed. As succinctly stated by the Court in *Kimmel's I*:

> Unopposed sale orders of this kind are analogous to consent orders because, like consent orders, they represent a compromise where each of the affected parties give up something they might have won in litigation had they pursued it, and they each waive their rights to that litigation by allowing the sale order to be entered. *See ITT Cont'l Baking Co*., 420 U.S. at 233. Consider also that parties affected by an unopposed sale order are deemed to have "consented to" its precise terms and conditions, as was expressly the case here. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) (*citing In re Tabone, Inc.,* 175 B.R. 855, 858 (Bankr.D.N.J.1994); *In re Elliot,* 94 B.R. 343, 345–46 (Bankr.E.D.Pa.1988)); *see also In re Szostek,* 886 F.2d 1405, 1409 (3d Cir.1989). Finally, like parties to a consent order, the parties affected by entry of an unopposed sale order often have purposes generally at odds with one another, and the resultant sale order embodies as much of those divergent purposes as the respective parties have the bargaining power and skill to achieve. *See ITT Cont'l Baking Co*., 420 U.S. at 236*; See also U.S. v. Armour & Co.,* 402 U.S. 673, 681–682 (1971).

*Kimmel's I*, 2020 WL 5576960, at *6, n. 14. Thus, the parties are deemed to have "waived" their right to insist upon additional language in the APA or Sale Order compelling Rausch Creek to assume reclamation liability in the absence of a transfer pursuant to § 86.56. Likewise, the parties are deemed to have "consented to" the precise terms and conditions of the APA and Sale Order, as approved and entered by the Court. In addition, Fulton Bank, the PA DEP, and the Debtors (and thus the Trustee), are parties affected by entry of the unopposed Sale Order that have a purpose generally at odds with one another and with Rausch Creek. As such, the Court

21

must view the unopposed Sale Order as embodying as much of the divergent purposes as they each had the bargaining power and skill to achieve. Therefore, the Sale Order and the APA will be enforced according to their plain language.

For the foregoing reasons, the Motion to Compel and the Motion for Contempt will be denied and the request for damages will be denied without prejudice. An appropriate order will follow.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: February 17, 2023