**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 7 |
| KIMMEL'S COAL AND PACKAGING, INC., | : | |
| MEADOWBROOK COAL COMPANY, INC., | : | CASE NOS. 1:18-bk-01609-HWV |
| MICHAEL COAL COMPANY, INC., | : | 1:18-bk-02506-HWV |
| KIMMEL'S POWER PLANT SERVICES, | : | 1:18-bk-02507-HWV |
| INC., KIMMEL'S MINING COMPANY, INC., | : | 1:18-bk-02509-HWV |
| | : | 1:18-bk-02510-HWV |
| Debtors. | : | |
| | : | Jointly Administered under |
| FULTON BANK, N.A., | : | 1:18-bk-01609-HWV |
| | : | |
| Movant | : | Motion to Compel Compliance with Sale |
| | : | Order and for Declaratory Relief |
| v. | : | Regarding Security Interests of Fulton |
| | : | Bank, N.A. |
| KIMMEL'S COAL AND PACKAGING, INC., | : | |
| MEADOWBROOK COAL COMPANY, INC., | : | |
| MICHAEL COAL COMPANY, INC., | : | |
| KIMMEL'S POWER PLANT SERVICES, | : | |
| INC., KIMMEL'S MINING COMPANY, INC., | : | |
| | : | |
| Respondents. | : | |

## OPINION

This matter is before the Court on remand from the United States District Court for the Middle District of Pennsylvania. (Doc. 635). The Court addresses two motions filed by Fulton Bank, N.A. ("Fulton Bank"): (1) the Motion to Compel Compliance with the Sale Order and for Declaratory Relief (the "Motion to Compel"), Doc. 369, and (2) the Motion for Contempt against Rausch Creek, L.P. (the "Motion for Contempt"), Doc. 494.

For the reasons that follow, the Motion to Compel will be granted in part and denied in part. The Motion for Contempt will be denied. Fulton Bank's request for damages will also be denied.

1

## I. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334(b). This dispute arises from the Court's September 4, 2018 Order approving the sale of the Debtors' assets to Rausch Creek Land, L.P. ("Rausch Creek") under 11 U.S.C. § 363 (the "Sale Order"). (Doc. 168). The Sale Order expressly retained jurisdiction to interpret and enforce its provisions. (*Id*. at 9).[1]

The matters before the Court concern enforcement of the Asset Purchase Agreement ("APA"), as incorporated into the Sale Order, and a related stipulation dated July 8, 2019 (the "Stipulation"). (Doc. 411). These are core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).

This opinion is entered pursuant to the District Court's remand order dated January 17, 2024.

## II. FACTS AND PROCEDURAL POSTURE

This matter has generated four opinions of this Court[2] and two decisions from the United States District Court for the Middle District of Pennsylvania.[3] The central issue has remained consistent: what obligations Rausch Creek assumed under the APA and the Sale Order with

---

[1] For ease of reference, and where appropriate, the Court utilizes the page numbers from the CM/ECF footer.

[2] *In re Kimmel's Coal & Packaging, Inc.*, 2020 WL 5576960 (Bankr. M.D. Pa. June 1, 2020) ("*Kimmel's I*"); *In re Kimmel's Coal & Packaging, Inc.*, 2021 WL 4458835 (Bankr. M.D. Pa. Sept. 28, 2021) ("*Kimmel's II*"); *In re Kimmel's Coal & Packaging, Inc.*, 2021 WL 5769319 (Bankr. M.D. Pa. Dec. 3, 2021) ("*Kimmel's III*"); and *In re Kimmel's Coal & Packaging, Inc.*, 2023 WL 2089143 (Bankr. M.D. Pa. Feb. 17, 2023) ("*Kimmel's IV*").

[3] *Rausch Creek Land, L.P. v. Fulton Bank, N.A.*, 642 B.R. 706 (M.D. Pa. 2022); *Fulton Bank, N.A. v. Rausch Creek Land, L.P. (In re Kimmel's Coal & Packaging, Inc.)*, 656 B.R. 525 (M.D. Pa. 2024).

respect to the White Pine[4] and Branchdale[5] mining permits (collectively, the "Permits"). On remand, the Court must determine whether, and to what extent, Rausch Creek was required to pursue transfer of the Permits and to assume the associated reclamation liabilities.

Each prior opinion followed multi-day evidentiary hearings and a substantial record, including documentary evidence and post-hearing briefing. Those proceedings produced detailed findings of fact and conclusions of law addressing many of the issues now before the Court. Although the remand alters certain aspects of the Court's prior rulings, those opinions remain relevant. A brief review follows in lieu of a full recitation of the facts.[6]

### A. Guidance from Prior Court Opinions

#### 1. Kimmel's I

In *Kimmel's I*, the Court considered Fulton Bank's argument that Rausch Creek assumed reclamation liability for the Permits at closing on the sale of the Debtors' assets. *In re Kimmel's Coal & Packaging, Inc.*, 2020 WL 5576960 (Bankr. M.D. Pa. June 1, 2020) ("*Kimmel's I*"). The Court rejected that argument. The Court found that neither the APA nor the Sale Order required Rausch Creek to assume such liability. It further held that reclamation liability could pass only through a permit "transfer" under 25 Pa. Code § 86.56, which requires DEP approval. Because no such approval was obtained, no transfer occurred prior to closing. Reclamation liability therefore did not pass to Rausch Creek at closing.

---

[4] Permit No. 54890102 (the "White Pine Permit") was issued by the Pennsylvania Department of Environmental Protection to White Pine Coal Company, Inc., as permittee, authorizing surface mining activities on a portion of approximately 729.78 acres of real property located in Cass, Foster, and Reilly Townships, Schuylkill County, Pennsylvania. *Kimmel's I*, 2020 WL 5576960, at *2.

[5] Permit No. 54120201 (the "Branchdale Permit") was issued by the Pennsylvania Department of Environmental Protection to Michael Coal, as permittee, authorizing the removal of slag and coal refuse on a portion of approximately 173 acres of real property located in Reilly Township, Schuylkill County, Pennsylvania. *Id.*

[6] The Court incorporates by reference the factual background detailed in *Kimmel's I–IV*.

In reaching that conclusion, the Court made several determinations that informed its subsequent decisions. The Court held that the APA and Sale Order were unambiguous, precluding consideration of parol evidence. It construed the term "transfer" to mean a formal reassignment of existing permits, subject to applicable law. The Court also concluded that § 86.56 provides the exclusive mechanism for permit reassignment. Finally, the Court understood that partial transfers of existing permits were permissible under that provision. Fulton Bank's Motion to Compel was therefore denied.

### 2. Kimmel's II

In *Kimmel's II*, the Court considered Rausch Creek's post-closing obligations to seek transfer of the Permits, assume reclamation liability, and replace Fulton Bank's letters of credit. *In re Kimmel's Coal & Packaging, Inc.*, 2021 WL 4458835 (Bankr. M.D. Pa. Sept. 28, 2021) ("*Kimmel's II*"). The Court held that, under the plain terms of the APA and the Sale Order, Rausch Creek was required to apply for transfer of as much of the Permits as it could under 25 Pa. Code § 86.56. The Stipulation did not alter those obligations. Approval of such a transfer would require Rausch Creek to assume reclamation liability for the affected land as a matter of law.

In reaching that conclusion, the Court again found the APA, Sale Order, and Stipulation unambiguous, precluding consideration of parol evidence. It reaffirmed that "transfer" means a formal reassignment of existing permits and that § 86.56 provides the exclusive mechanism for such transfers. The Court further concluded that partial permit transfers are permissible under that provision and that reclamation liability attaches by operation of law upon a successful transfer, not by contract. Consistent with those findings, the Court granted the Motion to Compel in part, denied the Motion for Contempt, and denied the request for damages without prejudice.

### 3. Kimmel's III

In *Kimmel's III*, the Court considered whether Rausch Creek had established grounds for a stay pending appeal of this Court's prior order granting, in part, Fulton Bank's Motion to Compel. *In re Kimmel's Coal & Packaging, Inc.*, 2021 WL 5769319 (Bankr. M.D. Pa. Dec. 3, 2021) ("*Kimmel's III*"). The Court held that it had not.

The Court explained that its prior ruling did no more than enforce obligations arising under the APA and the Sale Order, as interpreted under Pennsylvania law. As in *Kimmel's I* and *II*, the Court reaffirmed that those documents were unambiguous, precluding consideration of parol evidence. It again construed "transfer" to mean a formal, intact reassignment of existing permits and treated 25 Pa. Code § 86.56 as the exclusive legal mechanism for such transfers. The Court further reiterated its view that partial transfers of existing permits were permissible under that provision and that reclamation liability would attach only by operation of law upon approval of a permit transfer under § 86.56, not by contract.

For the first time, however, the Court acknowledged uncertainty about whether § 86.56 authorizes partial transfers of existing permits. It also recognized that its prior reliance on § 86.56 as the sole mechanism for effectuating the permit transfers contemplated by the APA may have been mistaken. Even so, the Court concluded that any such uncertainty did not disturb its core holding in *Kimmel's II*: that Rausch Creek was contractually obligated to apply for and accept transfer of whatever portion of the Permits it could lawfully obtain.

On that basis, the Court denied the request for a stay and suggested, *sua sponte*, that remand might be warranted to resolve the open questions concerning the scope of § 86.56 and responsibility for preexisting reclamation liability.

5

### 4. Kimmel's IV

In *Kimmel's IV*, the Court revisited its interpretation of 25 Pa. Code § 86.56, as foreshadowed in *Kimmel's III*. *In re Kimmel's Coal & Packaging, Inc.*, 2023 WL 2089143 (Bankr. M.D. Pa. Feb. 17, 2023) ("*Kimmel's IV*"). The Court rejected its earlier assumption that partial permit transfers might be permissible and held that § 86.56 authorizes only complete permit transfers. It nevertheless reaffirmed its prior conclusion that § 86.56 provides the exclusive legal mechanism for effecting the transfer contemplated by the APA. The Court also continued to construe "transfer," as used in the APA and the Sale Order, to mean a formal, intact reassignment of the existing Permits.

The Court recognized that Rausch Creek could seek new permits conferring equivalent mining rights without assuming the Debtors' preexisting reclamation liability, but concluded that such a process would not constitute a "transfer" under the APA. It further determined that a complete transfer under § 86.56 was not possible because the Debtors lacked access to portions of the land covered by the Permits (the "Permitted Land").

On that basis, the Court concluded that no transfer of the Permits, as required by the APA, could occur. Without a transfer under § 86.56, the condition precedent to any assumption of reclamation liability could not be satisfied. The Court therefore held that Rausch Creek had no remaining obligations under the APA and denied the Motion to Compel. It also denied Fulton Bank's Motion for Contempt, concluding that Rausch Creek had not violated a clear and specific order of the Court.

### 5. Present District Court Remand

On appeal, the District Court rejected this Court's conclusion in *Kimmel's I* through *IV* that the term "transfer," as used in the APA and the Sale Order, is unambiguous. It held instead

that "the contract language is ambiguous as to whether Rausch Creek was obligated to assume liability for reclamation of 'all or some portion of the Permitted Land,' including 'replacement of the Fulton Letters of Credit,'" and directed this Court to "review the pertinent parol evidence to determine the intent of the parties regarding the meaning of transfer, the obligation of Rausch Creek to assume reclamation liability, and all issues flowing therefrom." *Fulton Bank, N.A. v. Rausch Creek Land, L.P.* (*In re Kimmel's Coal & Packaging, Inc.*), 656 B.R. 525, 536, 539 (M.D. Pa. 2024).

The District Court also identified gaps in this Court's analysis of the Stipulation. It observed that the Court did not address "(i) the meaning of 'all areas' where Rausch Creek owns both surface and mineral rights[,] or (ii) the extent to which the 2019 and 2020 Applications 'replaced' all areas." *Id*. at 540. On remand, this Court must consider parol evidence as necessary to address those matters and to "resolve all issues flowing therefrom." *Id*. at 539–540.

**B. Impact of the Remand upon Guidance from Prior Court Opinions**

The District Court's determination of ambiguity is pivotal. This Court's conclusions in *Kimmel's I* through *III* rested on four interrelated premises: (1) the APA and the Sale Order were unambiguous; (2) "transfer" as used therein meant a formal, intact reassignment of existing permits; (3) such a transfer could occur only under § 86.56; and (4) partial permit transfers were permissible under that section. In *Kimmel's IV*, the Court rejected the fourth premise but left the others intact. The District Court's ruling removes the first premise and, in doing so, undermines the two that remain.

The remand therefore requires the Court to determine whether, and to what extent, those remaining premises continue to govern the parties' obligations under the APA and the Sale Order. Two meanings of "transfer" are possible. The first is a formal, intact reassignment of the existing

7

Permits accomplished exclusively through § 86.56, as previously held. The second is a broader reading that includes a new-permit application process conveying equivalent mining rights to Rausch Creek, provided it assumes the associated reclamation liability. The answer turns on the parties' intent as shown by the parol evidence.

### C. Questions Presented

Against this backdrop, the Court must resolve two related questions. The first is the meaning of the term "transfer" as used in the APA and the Sale Order. In light of the District Court's determination of ambiguity, the Court must determine, based on the parol evidence, what the parties intended by that term and the extent to which that understanding required Rausch Creek to pursue its rights under the Permits and to assume the associated reclamation liability.

The second concerns the meaning of the Stipulation and Rausch Creek's compliance with it. The Court must determine whether Rausch Creek's 2019 and 2020 permit applications satisfied the requirement to "replace all areas" where it held both surface and mineral rights, and whether it was further required to seek new permits conferring equivalent rights and to assume reclamation liability to the extent permitted by law.

The Court addresses these questions in turn.

### III. ANALYSIS

The parties advance two principal positions, though Fulton Bank raises additional arguments that are separately addressed. Fulton Bank, the Chapter 7 Trustee, and the Pennsylvania Department of Environmental Protection ("DEP") contend that the parol evidence reflects a shared understanding that Rausch Creek would assume reclamation liability as part of the sale consideration. They argue that the transaction was structured and approved on the

premise that permit rights and reclamation obligations were inseparable, and that Rausch Creek was expected to assume whatever portion of those obligations it could lawfully undertake.

On that view, the term "transfer" in the APA was not limited to a formal regulatory mechanism under § 86.56, but encompassed any process by which Rausch Creek could acquire mining rights and assume corresponding reclamation responsibilities, including the new-permit application process it pursued in 2019. They further contend that the Stipulation reaffirmed that understanding by requiring Rausch Creek to "replace all areas" where it held both surface and mineral rights.

Rausch Creek advances the opposite position. It contends that neither the APA nor the Stipulation required it to assume the Debtors' preexisting reclamation liability except upon a permit transfer approved by the DEP under § 86.56. According to Rausch Creek, "transfer" is a regulatory term of art referring exclusively to that process. Thus, if the Permits could not be transferred in their entirety under § 86.56, it bore no obligation to assume any existing reclamation liability for the Permitted Land. It further argues that its obligations under the Stipulation were limited to seeking permits for its own operations and posting bonds for future reclamation, not the Debtors' prior liabilities.

These competing interpretations frame the questions on remand. The first concerns the parties' intent under the APA and the Sale Order. The second concerns Rausch Creek's performance under the Stipulation. Both are governed by the following principles of Pennsylvania contract law.

Once contractual language is deemed ambiguous, Pennsylvania law directs the Court to consider competent parol evidence to ascertain the parties' intent at the time of contracting. *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010–13 (3d Cir. 1980). Parol

evidence consists of evidence outside the four corners of the contract. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001). It may include "the structure of the [agreement], the bargaining history," and the parties' course of performance reflecting their understanding of its terms. *Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001) (quoting *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993) and citing *Senior Exec. Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*, 89 F.3d 143, 150 (3d Cir. 1996)); *see also Bohler-Uddeholm*, 247 F.3d at 93–94. Although interpretation of contractual language is a question of law, disputes concerning intent revealed by parol evidence are questions of fact. *Rolls-Royce Motor Cars, Inc.*, 989 F.2d at 135, 137.

Parol evidence thus includes objective indicia of the parties' understanding outside the contract, including their negotiations, course of performance, and contemporaneous conduct. On remand, the Court must consider such evidence to resolve the factual disputes bearing on intent.

Having established the governing standard, the Court turns to the questions presented.

**A. The Parties' Intent Under the APA and Sale Order**

To resolve the first question concerning the parties' intent under the APA and Sale Order, the Court proceeds in two stages. The first examines the parol evidence analysis in the Court's prior decisions and considers the extent to which those findings address the District Court's remand. The second considers the additional parol evidence and argument now before the Court to determine whether it alters, refines, or confirms the Court's prior conclusions.

**1. Parol Evidence Analysis from Prior Decisions**

Section III.D of *Kimmel's II* contains a parol evidence analysis directly relevant to the District Court's remand. That section is captioned:

10

> Even If the APA Is Deemed Ambiguous, the Extrinsic Evidence Demonstrates
> Rausch Creek Was Obligated to Apply for as Much of the White Pine Permit as It
> Could, Assume Reclamation Liability, and Post Its Own Bonds.

*Kimmel's II*, 2021 WL 4458835, at \*12.

In that section, the Court conducted an extensive factual review of the APA, the Sale Order, and the surrounding parol evidence. The Court considered the parties' representations during the sale and contempt hearings, their pre- and post-closing conduct, Rausch Creek's permit applications and bonding activity, and the parties' dealings with the DEP before and after execution of the Stipulation. *Id*. at \*12–14. This evidence provided objective indicia of contractual intent bearing on the meaning of the term "transfer" and whether reclamation liability was understood to accompany the mining rights conveyed in the sale.

Because that analysis addressed the same interpretive questions now presented on remand, it remains highly probative and is incorporated herein by reference. For clarity, however, the Court again considers that evidence here. As in *Kimmel's II*, the evidence is addressed in four groups: (a) statements by the parties; (b) conduct before the Stipulation; (c) conduct and performance under the Stipulation; and (d) post-Stipulation conduct and interpretation.

### a. Statements Made by the Parties

The first category of parol evidence, drawn from *Kimmel's II* and incorporated here, consists of statements by counsel for the Debtors and for Rausch Creek. The Court considered these statements—made during the hearings on the Debtors' Motion for Sale (the "Sale Motion") and on Fulton Bank's Motion for Contempt—as contemporaneous, objective evidence of contractual intent. They bear directly on how the parties understood the relationship between successor mining rights and reclamation liability at the time of the transaction.

During the hearing on the Sale Motion, the Court expressed concern about the potential for a large administrative claim arising from reclamation liability. In response, Debtors' counsel stated: "[t]hat's one of the important reasons to do this sale to be honest with you, Your Honor, because there's huge requirements of land reclamation if the business were to close." *Kimmel's II*, 2021 WL 4458835, at *12 (citing Sale Hearing at 10:30:27). Counsel for Rausch Creek was present and did not dispute that characterization. Rausch Creek nevertheless proceeded with the sale on that premise. The Court treated this exchange as persuasive evidence that reclamation liability was a central component of the transaction, not a collateral or contingent consideration.

Rausch Creek's statements during the hearing on Fulton Bank's Motion for Contempt reinforced that understanding. At that hearing, Rausch Creek represented that "[o]nce the permits are transferred . . . the reclamation liability for the debtor is taken over by Rausch Creek or the Rausch Creek related entities, which will reduce any proof of claim or administrative claim that DEP might have against the estate." (Doc. 538, p. 10). This statement acknowledges that the acquisition of permit rights would include responsibility for existing reclamation obligations.

As *Kimmel's II* emphasized, these statements informed the Court's approval of the Sale Motion and its finding that the transaction was "in the best interests of the Debtors' bankruptcy estate and the creditors thereof." 2021 WL 4458835, at *12. The Court further stated that it "would not have approved" a sale conveying the Debtors' mining rights without a corresponding obligation to address existing reclamation liability. *Id*. Taken together, this record constitutes substantial extrinsic evidence of the parties' intent. It supports the conclusion that the transaction proceeded on the understanding that Rausch Creek, upon obtaining successor mining rights through the regulatory process, would bear the corresponding reclamation obligations.

### b. Conduct of the Parties (Pre-Stipulation)

The second category of parol evidence, examined in *Kimmel's II* and incorporated here, concerns the parties' conduct following approval of the sale but before execution of the Stipulation. The Court treated this conduct as objective evidence of contractual intent. It reflects Rausch Creek's understanding that it was required to pursue the regulatory processes necessary to obtain successor mining rights and that reclamation liability would attach upon DEP approval of the mechanism conferring those rights.

*Kimmel's II* identified three aspects of Rausch Creek's pre-Stipulation conduct supporting that conclusion. First, Rausch Creek's informal 2018 application to the DEP included the full reclamation liability associated with the Permits. *Kimmel's II*, 2021 WL 4458835, at *13. As the Court observed, "[t]his is strong evidence of Rausch Creek's own understanding that it was responsible for such liability." *Id*. Second, in each of the other permit applications Rausch Creek submitted pursuant to the APA and that the DEP accepted, Rausch Creek posted its own security for existing reclamation liability and assumed those obligations upon approval. *Id*. The Court found that this conduct likewise "demonstrate[d] Rausch Creek's understanding that it would have reclamation liability for the Permits at issue here." *Id*. Third, Rausch Creek initially relied on the Debtors' reclamation materials rather than preparing new submissions. The Court viewed this approach as consistent with statutory transfer requirements and with Rausch Creek's acknowledgment that "it is cheaper and easier to transfer a mining permit than create a new one[.]" *Id*.

Taken together, this conduct constitutes substantial extrinsic evidence of Rausch Creek's understanding of its obligations under the APA and the Sale Order. By including reclamation liability in its applications, posting its own security upon approval, and relying on the Debtors'

13

prior submissions, Rausch Creek engaged in a consistent course of performance. These actions reflect the parties' understanding that pursuing a regulatory "transfer" would carry corresponding reclamation liability.

### c. Conduct of the Parties (Stipulation)

The next category of parol evidence, examined in *Kimmel's II* and incorporated here, concerns the Stipulation and Rausch Creek's performance under it. The Court considered both the text of the Stipulation and the permit application submitted thereafter (the "2019 Application") as objective evidence of the parties' understanding of their obligations under the APA and the Sale Order. *Kimmel's II*, 2021 WL 4458835, at *13–14. This evidence reflects an understanding that Rausch Creek was required to pursue a regulatory pathway to obtain successor mining rights and that reclamation liability would attach upon DEP approval of that process.

Under the Stipulation, Rausch Creek agreed to "file an application for a new permit that replaces all areas where Rausch Creek owns both surface and mineral rights within the White Pine Mine/Baby Boy Jarvis Permit, No. 54890102, not later than July 15, 2019, and [to] prosecute the application diligently." (Doc. 411, p. 3). Rausch Creek timely filed the 2019 Application with the DEP under the provisions governing new permits, seeking authorization for mining activity on the portions of the mine corresponding to the property it had purchased. The 2019 Application covered all areas owned by Rausch Creek and proposed bonding sufficient to address existing reclamation obligations, while excluding the portions of the Permitted Land owned by Dale Coal (the "Dale Coal Parcel").[7] This course of performance demonstrates that

---

[7] Dale Coal is a third party that owned certain acreage within the Permitted Land for which Rausch Creek lacked surface rights or leasehold access. As a result, the Dale Coal Parcel could not be included in a DEP-approved permit transfer under 25 Pa. Code § 86.56.

Rausch Creek was able to pursue a regulatory pathway replacing all areas it owned, contrary to its later position that such a process was not required or not permitted.

As *Kimmel's II* observed, the 2019 Application shows three points. First, it sought authorization to mine only a portion of the existing permit area. Second, it proceeded as an application for a new permit rather than a transfer under § 86.56. Third, it proposed bonding for existing reclamation liability for all acreage except the Dale Coal Parcel, thereby seeking to assume that responsibility upon DEP approval, even though the new-permit process did not require it. Thus, the Court found that Rausch Creek understood it was expected to pursue a regulatory pathway to obtain mining rights and assume the associated reclamation responsibilities upon DEP approval, even if that process fell outside § 86.56.

Rausch Creek withdrew the 2019 Application shortly after *Kimmel's I*. That withdrawal departed from its prior conduct and prompted the present dispute. As justification, Rausch Creek asserted that it had "inadvertently" included reclamation liability in the 2019 Application. *Kimmel's II* found that explanation unpersuasive in light of contrary evidence, including testimony from a DEP representative that the 2019 Application was substantially approvable and that the agency was surprised by its withdrawal. *Kimmel's II*, 2021 WL 4458835, at *14 n.27; (Doc. 494-5; Doc. 571, p. 14). The Court further concluded that the timing and circumstances of the withdrawal reflected a shift in Rausch Creek's position following *Kimmel's I*, when it first advanced the narrower interpretation of the term "transfer" it now maintains. The Court adopts these conclusions here.

Taken together, the Stipulation, the 2019 Application, and Rausch Creek's withdrawal of the 2019 Application constitute persuasive extrinsic evidence of the parties' understanding of "transfer" as used in the APA and the Sale Order. This evidence supports the conclusion that

"transfer" was understood to encompass either a transfer under § 86.56 or a new-permit application process that, upon DEP approval, would confer equivalent mining rights with the associated reclamation obligations.

### d. Conduct of the Parties (Post-Stipulation)

The final category of parol evidence, examined in *Kimmel's II* and incorporated here, concerns the parties' conduct following execution of the Stipulation, particularly the dispute arising from Rausch Creek's withdrawal of the 2019 Application. After withdrawing that application, Rausch Creek asserted that the Stipulation required it to pursue a new-permit application process and that, because that process does not compel assumption of existing reclamation obligations, it bore no contractual duty under the APA or the Sale Order to assume such liability. (*See* Doc. 559, p. 4). *Kimmel's II* rejected that position in light of the extrinsic evidence.

Rausch Creek's position is difficult to reconcile with the text and purpose of the Stipulation. The Stipulation required Rausch Creek to "file an application for a new permit that replaces all areas where Rausch Creek owns both surface and mineral rights within the White Pine Mine/Baby Boy Jarvis Permit, No. 54890102, not later than July 15, 2019[.]" (Doc. 411, p. 3). As *Kimmel's II* observed, this language was negotiated against the backdrop of an ongoing dispute over responsibility for existing reclamation liability. That context provides strong evidence of the parties' intent. It is implausible that, while negotiating that issue, the parties intended to permit Rausch Creek to select a regulatory pathway that would eliminate that responsibility.

Finally, the record reflects that the parties understood the Stipulation as an interim procedural agreement to facilitate regulatory compliance while preserving their rights under the

APA and the Sale Order during the pendency of the dispute. Nothing in its text or in the circumstances of its negotiation suggests that it altered the allocation of reclamation responsibility established by the sale documents. Rather, as *Kimmel's II* recognized, the Stipulation functioned as a mechanism to facilitate DEP review of a permit application intended to "replace all areas" owned by Rausch Creek, not to redefine the parties' obligations.

Viewed as a whole, the parties' post-Stipulation conduct and the context of the Stipulation are incompatible with Rausch Creek's present interpretation. The reference to a "new permit" was understood as a means of implementing obligations already undertaken in the APA and the Sale Order, not avoiding them.

### e. Summary and Preliminary Conclusions

From the foregoing analysis, the Court draws several preliminary conclusions.

The record shows that the sale to Rausch Creek was approved and consummated with the shared understanding that reclamation liability would accompany the conveyance of the Debtors' mining rights upon DEP approval of a successor-rights mechanism. Rausch Creek's pre-Stipulation conduct, including its permit applications, bonding actions, and reliance on the Debtors' reclamation materials, confirms that understanding, even after its efforts to negotiate for access to the Dale Coal Parcel proved unsuccessful. This conduct reflects a consistent course of performance aligned with the expectation that reclamation liability would shift upon DEP approval of the regulatory process conferring successor mining rights.

Moreover, the Stipulation and the 2019 Application implemented, rather than altered, that understanding. Both reflect the same premise underlying approval of the sale: that Rausch Creek would seek to obtain mining rights for property it purchased in fee and assume the corresponding reclamation obligations upon DEP approval. Rausch Creek's subsequent withdrawal of the 2019

17

Application represents a change in position, not a different original intent. The contemporaneous record, including DEP testimony, indicates that the 2019 Application was substantially approvable and not the product of administrative error.

Viewed as a whole, the extrinsic evidence demonstrates that the parties used the term "transfer" in a functional sense. It encompassed either a permit reassignment under § 86.56 or a new-permit process that achieved the same result: the DEP-approved conferral of mining rights together with the attendant reclamation liability. The Court therefore preliminarily construes "transfer," as used in the APA and the Sale Order, to include any DEP-approved regulatory pathway that confers successor mining rights, with reclamation liability attaching upon such approval.

Having reached these preliminary conclusions, the Court turns to the additional parol evidence developed on remand to determine whether it alters that construction or otherwise informs the parties' intent and resulting obligations under the APA and the Sale Order.

### 2. Parol Evidence from Parties on Remand

The materials submitted on remand by Fulton Bank, the Trustee, the DEP, and Rausch Creek largely draw on the same evidentiary sources. For clarity and efficiency, the Court analyzes them collectively and organizes the discussion into four categories: (a) new evidence; (b) partially new evidence; (c) previously considered evidence with updates; and (d) cumulative evidence.

Within each category, the Court identifies the preliminary conclusions to which the evidence relates and explains whether it alters, refines, or confirms those conclusions. As explained below, none of the materials submitted on remand changes the Court's preliminary

conclusions regarding the meaning of the term "transfer" or the scope of Rausch Creek's obligations under the APA and the Sale Order.

### a. New Evidence

The only new admissible parol evidence introduced on remand consists of two items.[8] The first is the April 23, 2025 testimony of Michael Kutney ("Kutney") on behalf of the DEP. The second is a December 2019 email exchange between Terry Schmidt ("Schmidt") and counsel for Rausch Creek concerning the scope of the 2019 Application. Each qualifies as parol evidence because it reflects objective manifestations of intent outside the APA and the Sale Order and bears on the parties' understanding of the term "transfer." *See Mellon Bank, N.A.*, 619 F.2d at 1010–11.

Kutney testified that the 2019 Application "was on track to be approved" when Rausch Creek withdrew it and that the DEP viewed the filing as consistent with its replacement-permit procedures. (Doc. 664, p. 44; *see also* Doc. 669, pp. 6–7; Doc. 673, pp. 3–4; Doc. 671, pp. 11–12). The Schmidt correspondence likewise confirms that the 2019 Application was designed to "replace[] all areas where Rausch Creek owns both surface and mineral rights," mirroring the Stipulation. (Exhibit 2, Sawtelle Dep., Ex. 1, pp. 38–39 out of 104); (Doc. 664, pp. 121–22; Doc. 411, p. 3). These materials are new in form, but not in substance.

Though not substantively new, the evidence supports the Court's prior determinations in *Kimmel's II*, Section III.D, and its preliminary conclusions above. It confirms that the Stipulation and the 2019 Application implemented, rather than altered, Rausch Creek's obligation to assume reclamation responsibility for the areas it acquired. It also confirms that the parties used "transfer" in a functional sense, encompassing either a permit reassignment under § 86.56 or a

---

[8] The Court gives no weight to deposition testimony of counsel cited by the parties to the extent it reflects counsel's subjective understanding or litigation position, rather than objective evidence of the parties' mutual intent.

new-permit process achieving the same result. Kutney's testimony further corroborates that the DEP viewed the 2019 Application as an appropriate mechanism to accomplish that result.

Importantly, neither item introduces conflicting evidence of intent. Both reinforce the Court's conclusion that the parties understood that Rausch Creek would acquire mining rights together with the corresponding reclamation obligations. Accordingly, these materials supplement the record but do not alter the Court's prior analysis.

### b.  Partially New Evidence

The post-remand record also includes several items that are partially new. These materials derive from evidence previously available, though not expressly addressed in *Kimmel's II*. They include deposition excerpts from Schmidt, updated bonding and acreage data from DEP records, and a statement by Attorney Lawrence V. Young, counsel for Rausch Creek, at the January 29, 2020 hearing on Fulton Bank's Motion for Contempt. Collectively, they elaborate on evidence previously considered in *Kimmel's II*, Section III.D.

Schmidt's deposition testimony clarifies that, in preparing Rausch Creek's 2018 and 2019 permit applications, he incorporated the full reclamation obligations associated with each area of mined land and calculated bond amounts accordingly. (Exhibit 4, Schmidt Dep. Aug. 27, 2020, at 17:3–20:4). Updated bonding records show that Rausch Creek posted security in its own name for approximately 111 acres previously mined by the Debtors, consistent with its practice under other permits acquired pursuant to the APA and the Sale Order. These details refine the record but do not alter the Court's conclusion that Rausch Creek's conduct reflected an understanding that it would assume reclamation responsibility for the areas it acquired.

The Trustee and Fulton Bank also rely on a statement by Attorney Young at the January 29, 2020 hearing. He stated that "to the extent that a permit can be issued that we can acquire the

right to mine a property, we are taking over the liability. But to the extent that we can't get a permit, we're not taking over the liability." (Doc. 458, p. 17). Although not expressly addressed in *Kimmel's II*, this statement is consistent with the Court's conclusion that reclamation liability was understood to attach upon DEP approval of a permit conferring mining rights. It is not limited, as Rausch Creek now argues, to permit transfers under § 86.56. Instead, it reflects the same understanding identified in *Kimmel's II*: that reclamation liability would accompany the issuance or replacement of permits, whether through § 86.56 or a new-permit process.

Taken together, these materials add detail to the course of performance and representations already analyzed in *Kimmel's II* and above. They reinforce the Court's conclusion that Rausch Creek acted, and represented, as though reclamation liability was integral to the mining rights it sought to obtain. Accordingly, these materials supplement the record but do not alter the Court's analysis.

### c. Previously Considered and Updated Evidence

Most of the parol evidence cited on remand falls into a third category: evidence previously addressed and resolved, now presented in updated or expanded form. These materials include testimony from Robert Rivkin ("Rivkin"), as principal of Rausch Creek, as well as the Stipulation and the 2019 Application. Rivkin's testimony is new in form but not substance. The Stipulation and 2019 Application were central to the analysis in *Kimmel's II*, Section III.D, and are considered here on remand. However, their renewed presentation adds no materially new content.

Rivkin testified on April 24, 2025 that he would not have agreed to assume reclamation liability absent a full permit transfer under § 86.56. (Doc. 665, pp. 18–19; Doc. 668, pp. 5–6; Doc. 674, pp. 3–4). This testimony restates Rausch Creek's longstanding position that

21

reclamation obligations arise only upon a formal transfer under § 86.56. The Court acknowledged that position in its prior decisions by interpreting § 86.56 as the exclusive regulatory mechanism for transferring permit rights and by assuming that partial transfers were permissible under that provision.

As explained above, however, the Court has since reconsidered and rejected those assumptions in light of the District Court's determination of ambiguity and the parol evidence. The Court has preliminarily construed the term "transfer" to include any DEP-approved regulatory pathway that confers successor mining rights, with the attendant reclamation liability, subject to confirmation upon consideration of the additional parol evidence submitted on remand. Rivkin's testimony does not address the ambiguity identified by the District Court or the extrinsic evidence bearing on the parties' shared intent, nor does it undermine the Court's preliminary construction. It therefore does not alter the Court's analysis.

The same is true of the Stipulation and the 2019 Application, which likewise reappear throughout the remand submissions. These materials reflect Rausch Creek's agreement to file a permit application "that replaces all areas where Rausch Creek owns both surface and mineral rights," together with the inclusion of reclamation liability for those areas. Their renewed citation does not introduce new facts. Instead, it confirms that the Stipulation implemented, rather than modified, the obligations established by the APA and the Sale Order.

In sum, this category consists of evidence already considered by the Court. It reinforces the conclusions reached in *Kimmel's II* and does not alter the Court's construction of the term "transfer" or the scope of Rausch Creek's obligations.

### d. Cumulative Evidence

The remaining materials cited in the parties' remand submissions are cumulative. They consist primarily of repeated transcript citations, re-summarized excerpts from the Stipulation and 2019 Application, and counsel's argument drawing on the same evidentiary sources already discussed above. (*See, e.g.*, Doc. 668, pp. 7–9; Doc. 669, pp. 5–6; Doc. 670, pp. 21–22; Doc. 671, pp. 13–15). These citations reiterate the factual and procedural history and rely on documents and testimony already analyzed in *Kimmel's II* and in this Opinion. None introduces new parol evidence or alters the record.[9]

Accordingly, the cumulative materials add no new factual or interpretive dimension to the parol evidence already analyzed. They do not affect the Court's conclusions regarding the parties' intended use of the term "transfer" or the scope of Rausch Creek's obligations under the APA and Sale Order.

### e. Summary and Conclusion

Taken together, the parol evidence cited on remand adds factual detail but does not materially alter the evidentiary record developed in *Kimmel's II*, Section III.D, and reexamined herein. The materials support the same conclusion: the parties used "transfer" in a functional sense, encompassing either a formal regulatory transfer under § 86.56 or a new-permit application process that conveys the same mining rights with the attendant reclamation liability. No party has presented new or conflicting extrinsic evidence that undermines that understanding.

Accordingly, in light of the District Court's determination that the APA and Sale Order are ambiguous, and upon consideration of the competent parol evidence, the Court concludes that the term "transfer" was used in a functional rather than purely technical sense. The parties

---

[9] To the extent the reply briefs restate those same arguments or quote from the same deposition and hearing transcripts, they likewise are cumulative. (*See* Doc. 673, pp. 3–4; Doc. 674, pp. 3–5; Doc. 675, pp. 2–3).

understood it to encompass either a reassignment of existing permits under § 86.56 or any other DEP-approved process by which Rausch Creek could obtain the Debtors' mining rights together with the associated reclamation obligations under Pennsylvania mining law. Under that shared understanding, Rausch Creek was obligated to pursue transfer or replacement of all mining rights it could lawfully obtain and, upon DEP approval, assume the attendant reclamation liability. Because Pennsylvania mining law requires reclamation liability to be secured by financial assurance, the obligation to assume that liability would be illusory if left unsecured. It therefore necessarily includes providing financial assurance sufficient to secure that liability.[10] The parol evidence thus confirms this interpretation of "transfer," which the Court adopted in *Kimmel's II*, Section III.D, and preliminarily set forth in Section III.A.1., *supra*, and now adopts as its final construction.

### B. The Stipulation

Having construed the term "transfer," the Court turns to the second question on remand: whether Rausch Creek complied with the Stipulation. Before reaching that issue, however, the Court addresses the District Court's determination that this Court erred by failing to analyze (i) the meaning of the phrase "all areas where Rausch Creek owns both surface and mineral rights" and (ii) "the extent to which the 2019 and 2020 applications 'replaced' all areas." *In re Kimmel's Coal & Packaging, Inc.*, 656 B.R. at 540. The District Court also noted that *Kimmel's IV* referred to those areas as "Real Property (only)," a term that does not appear in the Stipulation. *Id.*

---

[10] This conclusion is consistent with the Court's earlier rulings in *Kimmel's II* and *III*, which recognized that "under the plain terms of the parties' agreement, Rausch Creek was contractually obligated . . . to apply for and accept transfer of . . . whatever portion of the Permits that it could . . . even if that portion is something less than 100%." *Kimmel's III*, 2021 WL 5769319, at *5 (citing *Kimmel's II*, 2021 WL 4458835, at *10). In those cases, reclamation liability was expected to shift under 25 Pa. Code § 86.56 upon transfer. Here, the ruling is the same, except that liability now shifts under the APA itself upon transfer, based on the broader, functionally equivalent meaning of "transfer." In either case, the Fulton Bank bonds must be replaced to the extent Rausch Creek assumes reclamation liability upon DEP approval.

On remand, the Court addresses these issues before turning to Rausch Creek's compliance with the Stipulation.

### 1. This Court's Analysis of the Stipulation

The Court first clarifies its use of the term "Real Property" in *Kimmel's IV*. In *Kimmel's II*, the Court defined "Real Property" to mean all real estate conveyed to Rausch Creek under the APA, as identified in the APA and the Debtors' schedules, together with all associated surface and mineral rights. *See* 2021 WL 4458835, at *2 & n.4. That definition necessarily includes all areas for which Rausch Creek owns both surface and mineral estates within the White Pine Mine/Baby Boy Jarvis Permit, which is the property referenced in the Stipulation.

In *Kimmel's IV*, the Court referred to those areas as "Real Property (only)" when evaluating the Stipulation's requirement that Rausch Creek file an application to "replace[] all areas where [it] owns both surface and mineral rights." 2023 WL 2089143, at *8. At the time, the Court believed the definition of "Real Property" as set forth in *Kimmel's II* had been carried forward and applied in *Kimmel's IV* and therefore used the term as shorthand for that previously defined category without restating it. The definition, however, was not expressly incorporated into *Kimmel's IV*. Although the term was intended as shorthand for the same category of property, the Court did not restate the definitional source or make the equivalence clear. The District Court's concern on that point is therefore understandable.

Clarified here, the phrase "all areas where Rausch Creek owns both surface and mineral rights" as used in the Stipulation refers to the same operative subset of property the Court evaluated in *Kimmel's IV* under the label "Real Property (only)." The two formulations are therefore functionally equivalent for purposes of the Stipulation's compliance analysis. The Court acknowledges that the broader defined term "Real Property" also includes certain acreage

within the Branchdale Permit area that was not necessary to the Stipulation analysis. The inclusion of that additional acreage does not affect the result. At most, it reflects that the Court considered a superset of the relevant property. The analysis nevertheless encompassed all acreage required by the Stipulation.

The Court therefore concludes that it did analyze and apply the meaning of "all areas where Rausch Creek owns both surface and mineral rights," and whether the 2019 Application and the 2020 application each sought to "replace all areas" as required by the Stipulation. This clarification resolves the interpretive concerns identified on remand and provides the framework for the compliance analysis that follows.

### 2. Rausch Creek's Performance Under the Stipulation

The Court has already determined that the Stipulation and the 2019 Application implemented, rather than altered, Rausch Creek's contractual obligations under the APA and the Sale Order. The question presented here is therefore narrow: whether the Stipulation is sufficiently definite to support specific enforcement, and whether Rausch Creek's subsequent conduct supports a finding of contempt.

The governing standard is well settled. A court-approved stipulation is construed as a contract but enforced as a judicial order. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–38 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). That distinction is critical. Civil contempt is an exacting remedy. It requires clear and convincing evidence that "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citation omitted). Where ambiguity exists, it must be resolved in favor of the party charged with contempt. *Id.* (citing *United States on behalf of I.R.S. v. Norton*, 717 F.2d 767, 774

26

Case 1:18-bk-01609-HWV    Doc 691    Filed 03/30/26    Entered 03/30/26 11:40:23    Desc
Main Document    Page 26 of 37

(3d Cir. 1983)). A contempt citation likewise may not issue where "there is ground to doubt the wrongfulness of" the party's conduct. *Id.* (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) (internal quotation marks omitted)). Ambiguity or reasonable uncertainty regarding the scope of the order precludes a finding of contempt. Civil contempt thus turns not on the parties' understanding, but on the clarity of the Court's command. The Stipulation must articulate a clear and definite directive whose violation can be adjudged willful. Contractual clarity alone does not suffice.

Against that standard, the parties' positions are straightforward. Fulton Bank argues that Rausch Creek violated the Stipulation by withdrawing the 2019 Application and failing to "replace all areas" as required. (Doc. 671, p. 8). It reads the Stipulation to impose a continuing obligation to obtain approval of a replacement permit covering all such areas and to post reclamation bonds under 25 Pa. Code § 86.156. (*Id.*) The Trustee and the DEP advance similar arguments, relying in part on the Kutney testimony and the Schmidt correspondence discussed in Section III.A.2(a), *supra*. (Doc. 669, pp. 9–14; Doc. 670, pp. 22–25).

Rausch Creek disagrees. It contends that the Stipulation required only that it file an application and pursue it diligently to the extent permitted by law. (Doc. 668, pp. 3–5; Doc. 674, pp. 3–4). It further argues that regulatory constraints—including the lack of access to the Dale Coal Parcel within the Permitted Land—foreclosed a transfer under § 86.56, which it views as the exclusive method of "transfer" under the APA and Sale Order. (Doc. 668, pp. 3–8; Doc. 674, pp. 3–4). According to Rausch Creek, its withdrawal of the 2019 Application reflected its conclusion that those requirements could not be satisfied. (Doc. 674, pp. 3–4).

27

The dispositive question is not which interpretation is more persuasive, but whether the Stipulation sets forth a clear and definite command sufficient to support specific enforcement or a finding of contempt. The Court finds that it does not.

The Stipulation's operative language is brief. It obligates Rausch Creek to "file an application for a new permit that replaces all areas where Rausch Creek owns both surface and mineral rights" and to "prosecute that application diligently." (Doc. 411, p. 3). It does not specify timing, scope, consequences of agency action or inaction, or standards for measuring diligence or completion. It therefore provides limited guidance for assessing performance.

Subsequent events compounded that lack of specificity. As reflected in *Kimmel's I*, *II*, and *III*, the Court initially proceeded on the understanding that permit transfers could occur only through the process set forth in 25 Pa. Code § 86.56 and that partial transfers were permissible under that provision. Although those assumptions were later reconsidered, they informed how the parties, including Rausch Creek, understood what performance was required "to the extent permitted by law." That context reasonably influenced Rausch Creek's decision to withdraw the 2019 Application and reassess its regulatory options.

Fulton Bank argues that the withdrawal of the 2019 Application violated the requirement to "diligently prosecute" the application. (Doc. 671, pp. 11–13). That argument fails. The Stipulation provides no standard for measuring diligence where the permissible regulatory pathway itself was uncertain. The Court's own initial interpretation of the governing framework likewise rendered the operative language susceptible to more than one reasonable understanding.

Under these circumstances, the Court cannot find willful defiance of a clear and definite obligation. Even if the parties initially shared a common understanding of the Stipulation's purpose, its enforceability for contempt purposes was undermined as the governing legal

framework and the Court's interpretation of it evolved. The resulting uncertainty as to what the Stipulation required, and when, precludes a finding of contempt.

Moreover, the Stipulation must be understood in the context in which it was negotiated and approved.[11] As previously noted, the Stipulation was an interim agreement that preserved the parties' rights under the APA and Sale Order while providing a procedural mechanism to advance regulatory approvals. It functioned as an accommodation during ongoing litigation over the meaning of those documents. It did not expand, contract, or otherwise modify the parties' substantive obligations. The Stipulation's limited purpose, together with the contemporaneous uncertainty regarding the meaning of "transfer" and the applicable regulatory mechanism, reinforces that it cannot support specific enforcement or contempt.

For these reasons, the Court concludes that the Stipulation is not sufficiently definite or unambiguous to support specific enforcement or a finding of contempt. It was a temporary procedural instrument, not a source of new or expanded substantive obligations. Because ambiguity and evolving interpretation preclude a finding of willful noncompliance, the Motion for Contempt will be denied.

The foregoing analysis resolves the two questions presented on remand: the meaning of the term "transfer" as used in the APA and the Sale Order, and Rausch Creek's compliance with

---

[11] Fulton Bank argues in Question A1 of its initial post-trial brief that the Court's June 1, 2020 ruling "obviated" the Stipulation by substituting the Court's view of Rausch Creek's obligations for those allegedly assumed in the Stipulation. (Doc. 671, pp. 13–15). The Court rejects that argument. The Stipulation was not before the Court in *Kimmel's I*, and nothing in that decision purported to rewrite, nullify, or supplant it. Instead, the Court understood the Stipulation's directive—that Rausch Creek file a permit application covering areas where it held both surface and mineral rights and diligently prosecute that application—to be coextensive with the APA's requirement that Rausch Creek pursue permit transfers "to the extent transferable" under applicable law. *Kimmel's I* applied the APA and Sale Order in accordance with their terms. Any subsequent change in Rausch Creek's conduct reflects its own litigation position, not a judicial nullification of the Stipulation. Fulton Bank's characterization of the Court's June 2020 ruling as "obviating" the Stipulation also underscores the extent to which the governing legal assumptions evolved after the Stipulation was approved. That evolution further confirms that the Stipulation did not impose the fixed and unambiguous obligation necessary to support a finding of contempt.

the Stipulation. The parties' post-trial submissions, however, extend beyond those issues. Fulton Bank, in particular, advances additional arguments that either exceed the scope of the remand, restate previously rejected positions, or seek to reframe the dispute through new legal theories untethered from the operative instruments and regulatory framework. These arguments do not warrant further elaboration of the Court's analysis, but are addressed briefly for clarity and completeness.

### C. Fulton Bank's Remaining Arguments on Remand

Fulton Bank advances several additional arguments contending that, under the APA, the Sale Order, and the parol evidence record, Rausch Creek assumed responsibility for funding reclamation liability even if the Permits and corresponding mining rights were not transferred. These arguments take several forms. Some assert that Rausch Creek assumed the risk of regulatory non-approval by closing on the sale without securing access to all permit acreage, including the Dale Coal Parcel. Others invoke contract doctrines, such as assumption of risk, necessary implication, and Restatement (Second) of Contracts § 154, to impose liability notwithstanding the absence of a qualifying permit transfer. Still others attempt to recast regulatory non-approval as a failure to satisfy contractual contingencies.

Despite their varied framing, these arguments rest on a common premise: that reclamation liability may attach by contract or equity even absent DEP approval. That premise is incorrect and cannot be reconciled with either the scope of the District Court's remand or the governing legal framework.

For that reason, the arguments fail for two independent reasons. First, to the extent they are not already resolved by the Court's analysis above, they exceed the scope of the District Court's remand and are foreclosed by the law-of-the-case doctrine. Second, even if considered

30

on the merits, they fail as a matter of law because they are inconsistent with the governing documents, the regulatory framework, and the evidentiary record.

### 1. District Court Mandate and Law-of-the-Case

"It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.*

Nothing in the District Court's opinion reopens or calls into question this Court's prior holdings concerning the timing or source of reclamation liability, including its determination in *Kimmel's I* that such liability does not pass at closing and attaches only upon DEP approval of a qualifying successor-permit event. The District Court directed this Court to "review the pertinent parol evidence to determine the intent of the parties regarding the meaning of transfer, the obligation of Rausch Creek to assume reclamation liability, and all issues flowing therefrom." *In re Kimmel's Coal & Packaging, Inc.*, 656 B.R. 525, 539 (M.D. Pa. 2024). That instruction is tied to the meaning of "transfer" and the obligations that arise upon such a transfer. The District Court's opinion does not identify, raise, or invite reconsideration of when reclamation liability attaches, nor does it disturb the Court's conclusion, grounded in Pennsylvania's regulatory framework, that such liability arises only upon DEP approval of a qualifying successor-permit event.

Fulton Bank's remaining arguments proceed from a different premise. Each seeks to impose reclamation liability absent any approved transfer. That issue is neither expressly nor

31

implicitly within the scope of the remand. It remains governed by the law established in *Kimmel's I* and is not properly before the Court.

The Court therefore concludes that the remand did not reopen or disturb its prior determination that reclamation liability does not pass at closing and attaches only upon DEP approval of a qualifying successor-permit event under Pennsylvania law. That holding remains the law of the case. Arguments seeking to impose liability in the absence of such approval fall outside the scope of the remand and are not properly before the Court. Even if they were, they would fail on the merits, as explained below.

### 2. Fulton Bank's Remaining Theories Also Fail on the Merits

Even if Fulton Bank's remaining arguments were properly before the Court, they would fail on the merits for threshold reasons. Nothing in the APA or the Sale Order allocates reclamation liability to Rausch Creek absent DEP approval of a qualifying permit transfer. Nor does the parol evidence record suggest that the parties intended to alter Pennsylvania's statutory framework governing mining permits and reclamation obligations.

Fulton Bank's reliance on assumption-of-risk principles, necessary implication, and Restatement (Second) of Contracts § 154 is misplaced. Those authorities address the contract doctrine of mistake and the availability of rescission or reformation at the request of a contracting party. No party to the APA has pleaded mistake, sought rescission, or requested reformation. In any event, the only interpretive task permitted on remand, clarification of the meaning of the term "transfer," has already been completed in Sections III.A and III.B, *supra*. These doctrines provide no basis for imposing reclamation liability absent DEP approval. Moreover, it is doubtful that Fulton Bank, as a non-contracting party, would have standing to invoke them.

32

Fulton Bank's related contention that Rausch Creek assumed reclamation liability by closing on the sale without satisfying alleged contingencies fares no better. It argues, in essence, that by proceeding to closing without securing access to all permit acreage, Rausch Creek assumed the risk that a qualifying permit transfer might not be obtained and that reclamation liability would nevertheless attach notwithstanding the absence of DEP approval. That argument is, in substance, a restatement of the same premise rejected above: that reclamation liability may attach despite the absence of DEP approval of a qualifying permit transfer.

Even if the APA imposed a duty to obtain a lease or other right of access to the Dale Coal Parcel, which it did not, the failure to satisfy that condition would not establish that Rausch Creek agreed to assume reclamation liability. Nor does Fulton Bank's argument correctly characterize the risk Rausch Creek assumed by proceeding to closing without securing access to all permit acreage. That risk was commercial, not regulatory. At most, Rausch Creek assumed the possibility that it might pay a purchase price negotiated in anticipation of broader access than it ultimately obtained. In other words, the transaction's economic value might prove lower than expected. Nothing in the APA, the Sale Order, or Pennsylvania's statutory framework converts that commercial risk into an assumption of reclamation liability absent DEP approval.

In addition, as the Court explained in *Kimmel's I* and reaffirmed in *Kimmel's II* and *IV*, the APA expressly limits assumed liabilities to those specifically identified in the agreement, and reclamation liability was not among them.[12] Reclamation liability does not pass by implication from closing conduct or unmet contingencies, and Pennsylvania law does not permit such an

---

[12] In *Kimmel's IV*, the Court held that the APA and Sale Order "lack sufficiently definite language to warrant specific enforcement of an obligation on the part of Rausch Creek to assume existing reclamation liability[.]" 2023 WL 2089143, at *8. It further held that "the only sufficiently definite language that warrants specific enforcement on this issue is found in paragraph 2.6 of the APA, which excepts Rausch Creek from any such obligation." *Id.* Nothing in the District Court's remand disturbed that determination.

obligation to be inferred from the nonoccurrence of a condition precedent absent a contractual provision imposing it. Fulton Bank identifies no authority to the contrary. Its argument asks the Court to infer a substantive assumption of liability from conduct that, at most, implicates contractual performance. The governing documents and the evidentiary record do not support that inference.

Fulton Bank's reliance on the Stipulation does not alter this analysis. As explained above, the Stipulation neither amended the APA nor modified the regulatory conditions under which reclamation liability may attach. It described procedural steps Rausch Creek was to pursue in seeking permit approval; it did not create or assign reclamation liability independent of DEP action.

The Court therefore concludes that, even if Fulton Bank's remaining theories were properly before it, they fail as a matter of law. Neither the APA nor the Sale Order allocates reclamation liability to Rausch Creek absent DEP approval of a qualifying successor-permit event, and no doctrine of mistake, assumption of risk, necessary implication, or contractual contingency supplies such an obligation. The commercial risks associated with closing did not give rise to regulatory liability under Pennsylvania's mining framework, nor did the Stipulation amend the APA or the Sale Order to create independent reclamation obligations. Accordingly, no basis exists in contract, equity, or statute to impose reclamation liability absent DEP approval.

The Court has considered the remaining arguments advanced by the Trustee and the DEP. To the extent not expressly addressed above, those arguments are resolved by the Court's analysis and do not present any additional issue within the scope of the District Court's remand.

## IV. CONCLUSION

For the reasons set forth above, the Court makes the following findings and conclusions:

First, in light of the District Court's determination that the APA and Sale Order are ambiguous, and upon consideration of the competent parol and extrinsic evidence, the Court concludes that the term "transfer," as used in the APA and the Sale Order, was employed in a functional rather than purely technical sense. The parties understood it to encompass either a reassignment of existing permits under 25 Pa. Code § 86.56 or any other DEP-approved process by which Rausch Creek could obtain the Debtors' mining rights together with the associated reclamation obligations under Pennsylvania law. Under that shared understanding, Rausch Creek was obligated to pursue transfer or replacement of all mining rights it could lawfully obtain under the APA and Sale Order and, upon DEP approval, to assume the attendant reclamation liability, including financial assurance sufficient to secure that liability.

Second, the Court concludes that it did analyze and apply the meaning of the phrase "all areas where Rausch Creek owns both surface and mineral rights" as used in the Stipulation, and whether the 2019 and 2020 applications sought to "replace all areas" as required. As clarified herein, that phrase refers to the same operative subset of property evaluated in *Kimmel's IV*. No unresolved interpretive issues remain regarding the phrasing in the Stipulation.

Third, the Court concludes that the Stipulation is not sufficiently definite or unambiguous to support specific enforcement or a finding of contempt. It was a temporary procedural instrument designed to preserve progress amid uncertainty, not a source of new or expanded substantive obligations. Because ambiguity and evolving interpretation preclude a finding of willful noncompliance, the Motion for Contempt will be denied.

Fourth, the Court concludes that the District Court's remand was limited to determining the intended meaning of the term "transfer" and the obligations arising upon such a transfer. The remand did not reopen or disturb this Court's prior determination that reclamation liability does

35

not pass at closing and attaches only upon DEP approval of a qualifying successor-permit event under Pennsylvania law. That holding remains the law of the case. Any argument seeking to impose reclamation liability in the absence of such an approved transfer falls outside the scope of the remand and is not properly before the Court.

Fifth, the Court concludes that, even if Fulton Bank's remaining theories were properly within the scope of the remand, they fail as a matter of law. Neither the APA nor the Sale Order allocate reclamation liability to Rausch Creek absent DEP approval of a qualifying successor-permit event, and no doctrine of mistake, assumption of risk, necessary implication, or contractual contingency supplies such an obligation. The commercial risks associated with closing likewise do not give rise to regulatory liability under Pennsylvania's mining law framework. Nor did the Stipulation amend the APA or the Sale Order to create independent reclamation obligations. Accordingly, no basis exists in contract, equity, or statute to impose reclamation liability absent DEP approval.

Finally, the Court has considered the remaining arguments advanced by the Trustee and the DEP. To the extent not expressly addressed above, those arguments are resolved by the Court's analysis and do not present any additional issue within the scope of the District Court's remand.

The Court's construction of the APA and the Sale Order carries with it a corresponding obligation of performance. If Rausch Creek has not satisfied its obligation to pursue the transfer or replacement of all mining rights it could lawfully obtain under the APA and Sale Order together with the attendant reclamation liability, it must do so. This requires Rausch Creek to submit an application to the appropriate governmental authority seeking to obtain such mining

36

rights and to assume the corresponding reclamation obligations, including financial assurance sufficient to secure that liability, consistent with this Opinion.

Any resulting assumption of reclamation liability, and the effectiveness of any corresponding financial assurance, shall occur through the regulatory process and upon DEP approval. To the extent such approval results in Rausch Creek assuming reclamation liability for any of the Permitted Land, any reduction or release of the Fulton Bank letters of credit shall occur in accordance with Pennsylvania mining law and the determinations of the DEP.

The Motion to Compel will be granted in part and denied in part. It will be granted to the extent it seeks clarification of the meaning of the term "transfer" under the APA and the Sale Order, a ruling on compliance with the Stipulation, and enforcement of Rausch Creek's obligations as construed herein, and denied to the extent it seeks to impose reclamation liability or other obligations on Rausch Creek beyond those required by the governing agreements, Pennsylvania law, or the scope of the District Court's remand. The Motion for Contempt will be denied, as will Fulton Bank's request for damages.

An order consistent with this Opinion will be entered.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: March 30, 2026

37